175 So. 638

**FRANCIS v. LOUISIANA & A. RY. CO.**

No. 34349.

June 21, 1937.

Rehearing Denied July 8, 1937.

Robert C. Taylor and Albritton & Hardin, all of Baton Rouge, for applicant.

Burford & White, of Shreveport, and Milling, Godchaux, Saal & Milling, of New Orleans, for respondent.

O'NIELL, Chief Justice.

This is a suit for compensation under the State Employers' Liability Act (Act No. 20 of 1914, as amended). The claim is for the death of the plaintiff's husband, who was killed accidentally by a motorcycle while he was performing services arising out of and incidental to his employment as a crossing watchman, or flagman, for the defendant, railway company. The amount claimed is $3 per week for 300 weeks, plus $144 for burial expenses, or a total of $1,044. The railway company, answering the suit, pleaded that the company was acting as a common carrier engaged in interstate commerce by railroad and that the plaintiff's husband was killed while so employed. Hence the defendant pleaded that, according to section 30 of the state Employers' Liability Act, as amended by Act No. 244 of 1920, the statute was not applicable to the case, and that, if the plaintiff had a right of action, it was only for damages under the Federal Employers' Liability Act (U.S.Code, title 45, chapter 2, § 1, 45 U.S.C.A. § 51, Act of April 22, 1908, c. 149, § 1, 35 Stat. 65). The judge of the district court, after hearing the evidence, sustained the defendant's plea and dismissed the suit. The judgment was affirmed by the Court of Appeal. Francis v. Louisiana & Arkansas Railway Co., 171 So. 147.

The plaintiff has no possible claim under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59, because the act does not hold a common carrier by railroad, engaged in commerce between the states, liable in damages for injury or death suffered by an employee while he is employed by such carrier in such commerce, except "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." U.S.Code, title 45, chap. 2, § 1, 45 U.S.C.A. § 51, Act of April 22, 1908, c. 149, § 1, 35 Stat. 65.

Francis was killed, about one o'clock in the morning, by a policeman on a motorcycle, running into him accidentally, while he (Francis) was in the boulevard, with a red lantern, giving warning, to any one who might be approaching the railroad track, that a locomotive was approaching the crossing. The railroad company had nothing to do with the accident, and has no responsibility whatever in the matter unless it results solely from the fact that Francis was performing the service for which he was employed by the railroad company at the time of the accident.

The question, therefore, is whether Francis was, at the time of the accident, employed in interstate commerce, within the meaning of the federal statute. What the nature of his employment was at other times is immaterial, because the federal statute refers only to the service that was being rendered at the time of the accident. The statute is not applicable unless the employee at the time of the acci-

dent was engaged in interstate transportation, or in work so closely related to it as to be practically a part of it. Illinois Central R. Co. v. Behrens, 233 U.S. 473, 34 S.Ct. 646, 58 L.Ed. 1051, Ann.Cas.1914C, 163; Shanks v. Delaware, L. & W. R. Co., 239 U.S. 556, 558, 36 S.Ct. 188, 189, 60 L.Ed. 436, 438, L.R.A.1916C, 797; Chicago, B. & Q. R. R. Co. v. Harrington, 241 U.S. 177, 36 S.Ct. 517, 60 L.Ed. 941; all of which decisions and others of the same import, are cited in Fluitt v. New Orleans, T. & M. Ry. Co., 187 La. 87, 174 So. 163.

The only duty that Francis had to perform was to warn pedestrians and vehicle traffic on the boulevard whenever a train or locomotive would be approaching the crossing. In the daytime he used a tin disc, painted red, and bearing the sign "STOP," and at night he used a red lantern. It was not his duty to signal trains. It was testified to by one—and intimated by another—of the railroad employees that it would have been the duty of Francis to flag a train on an extraordinary occasion, as, for example, if a funeral procession had been crossing the railroad track, or if a fire apparatus or an ambulance had been approaching the track, when a train was approaching the boulevard; but it was admitted by an official of the railway company, as a witness in the case, that there had never been such an occasion, as far as he knew, for a crossing flagman to flag a train; and it was shown that Francis had never flagged a train during the whole ten years that he had served as flagman at North boulevard. Our impression from the testimony on that subject is that it would have been the duty of Francis, only in the sense that it would have been the duty of any one who might happen to be at the crossing, to flag a train in an emergency, if necessary to avoid an accident.

On the occasion of the killing of Francis, only a switch engine, or yard engine, as it is called, was approaching the crossing. There was no car attached to the engine. It was used only as a switch engine, for making up and putting out strings of cars for other engines to pick up, as a part of their trains. Some of the cars so handled by the switch engine were employed in interstate transportation, and some in intrastate transportation. This switch engine, on the occasion of the accident, had just come out of the engine track, which, as we understand, was its abiding place when not in use. It was on its way to a switch track, called track No. 1, where it was to make up the strings of cars to be picked up by trains which were to come through Baton Rouge early in the morning —two of which trains were engaged in interstate transportation. It was necessary for the switch engine to back across North boulevard beyond a point where the engine track joined the main line, and thence to go forward on the main line across the boulevard and to the point where the switch track called track No. 1 branched off from the main line. It was while the engine was approaching or crossing the boulevard, on the main line, that the accident happened. One of the men on the engine saw the accident. The crew backed the engine up to the scene of the accident, and afterwards went to the depot in Baton

Rouge and summoned an ambulance. After the delay that was caused by the accident, the crew proceeded on their way into track No. 1, and made up the strings of freight cars, which were taken out afterwards by the trains that came by in the morning. Some of the cars that were so handled were destined to go and did go to points in Arkansas.

■ Our opinion is that the work which Francis was engaged in at the time of the accident was only remotely related to interstate transportation—not so closely or directly related to it as to be practically a part of it. The rule was stated in the cases which we have cited, particularly in Shanks v. Delaware, L. & W. R. Co., thus:

■ "Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see Swift & Co. v. United States, 196 U.S. 375, 398, 25 S.Ct. 276, 49 L.Ed. 518, 525), and that the true test of employment in such commerce in the sense intended is, Was the employee at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?"

In Erie Railway Co. v. Welsh, 242 U.S. 303, 37 S.Ct. 116, 118, 61 L.Ed. 319, the test is given thus:

"By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act. Illinois C. R. Co. v. Behrens," etc.

To the same effect is New York Central R. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A.1917D, 1, Ann. Cas.1917D, 629.

In Chicago & Northwestern Railway Co. v. Bolle, 284 U.S. 74, 52 S.Ct. 59, 61, 76 L.Ed. 173, the court said that the term "interstate transportation," as distinguished from "interstate commerce," was used advisedly—thus:

"It will be observed that the word used in defining the test is 'transportation,' not the word 'commerce.' The two words were not regarded as interchangeable, but as conveying different meanings. Commerce covers the whole field of which transportation is only a part; and the word of narrower signification was chosen understandingly and deliberately as the appropriate term. The business of a railroad is not to carry on commerce generally. It is engaged in the transportation of persons and things in commerce; and hence the test of whether an employee at the time of his injury is engaged in interstate commerce, within the meaning of the act, naturally must be whether he was engaged in interstate transportation, or in work so closely related to such transportation as to be practically a part of it."

The Court of Appeal was of the opinion that this case was controlled by the ruling in Philadelphia & Reading Railway Co. v. Di Donato, 256 U.S. 327, 41 S.Ct. 516, 517, 65 L.Ed. 955. The similarity between

this case and that case is that in both cases the plaintiff's husband was killed while employed as a flagman. As stated in the syllabus, the facts of the Di Donato Case seem very much like the facts of this case. But there are features which clearly distinguish the Di Donato Case from this case. In the first place, Di Donato's employment, "as a [railway] flagman at a public crossing," was to signal trains—"to signal both intrastate and interstate trains." The finding of fact was that Di Donato "while acting in the course of his employment while flagging a train * * * was struck by a train of the company and instantly killed." It was not shown whether that train was an intrastate or an interstate train. In the course of the opinion the court said: "And besides, * * * Di Donato's duty had other purpose than the prevention of a disaster to a particular train. It had purpose as well to the condition of the tracks and their preservation from disorder and obstructions. This service and the other service cannot be separated in duty and responsibility."

The decision in the Di Donato Case was rested upon the decision in Pedersen v. Delaware, L. & W. R. Co., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas.1914C, 153, 3 N.C.C.A. 779, decided in 1913. The Pedersen Case was given as the authority for the decision in two other cases, both argued on January 8 and decided on May 17, 1920, namely, Erie Railroad Co. v. Collins, 253 U.S. 77, 40 S.Ct. 450, 64 L.Ed. 790; and Erie Railroad Co. v. Szary, 253 U.S. 86, 40 S.Ct. 454, 64 L.Ed. 794; both of which decisions were, by name, over-ruled in Chicago & Eastern Illinois Railroad Co. v. Industrial Commission of Illinois and Joe Thomas, 284 U.S. 296, 52 S.Ct. 151, 152, 76 L.Ed. 304, 77 A.L.R. 1367, in 1932. The court referred to the Collins Case and the Szary Case thus:

"Both cases are out of harmony with the general current of the decisions of this court since the Shanks Case, Chicago & N. W. R. Co. v. Bolle, 284 U. S. 74 ante, 52 S.Ct. 59, 76 L.Ed. 173, decided November 23, 1931, and they are now definitely overruled. The Harrington Case furnishes the correct rule," etc.

In Chicago & N. W. R. Co. v. Bolle, supra, the court referred by name to the Pedersen Case, and to the view there expressed, and said: "This court, however, repudiated that view, and reversed in an opinion per curiam on the authority of the Shanks Case. In New York Cent. R. Co. v. White, 243 U.S. 188, 192, 37 S.Ct. 247, 61 L.Ed. 667 [670], L.R.A.1917D, 1, Ann. Cas.1917D, 629 [13 N.C.C.A. 943], it was held, applying the test of the Shanks Case," etc.

The Di Donato Case may be deemed authority yet for the proposition there stated; but, since the doctrine of the Pedersen Case has been declared "repudiated" and the Collins Case and the Szary Case have been overruled, we do not believe that the Supreme Court of the United States would extend the doctrine of the Di Donato Case so as to hold that the work in which the husband of the plaintiff in this case was engaged when he was killed was closely or directly related to interstate transportation.

In this connection we observe that the amendment of section 30 of Act No. 20 of 1914, by Act No. 244 of 1920, seems to have been made with reference to the decisions of the Supreme Court of the United States on the subject which we are now considering. Section 30 is the section which declares that the state statute shall not be construed to apply to an employer acting as a common carrier while engaged in interstate or foreign commerce by railroad, etc. Originally, this section of the act was in two paragraphs, numbered 1 and 2. By the act of 1920, paragraph 2 of this section of the act of 1914 was deleted, and a material change was made, in the form of a proviso, in adopting paragraph 1 as all of section 30. For convenience, we shall inclose in brackets that part of paragraph 1 of the original section, for which the new matter in the amendment of the section was substituted. The original section was:

"1. Be it further enacted, etc., That this Act shall not be construed to apply to any employer acting as a common carrier while engaged in interstate or foreign commerce by railroad, [which employer, by reason of being engaged in interstate or foreign commerce by railroad, is not subject exclusively to the legislative power of the State of Louisiana, or for which employer and the employee thereof a rule of liability or method of compensation has been, or may be, established by the Congress of the United States; nor shall it apply to any employee of such common carrier injured or killed while so employed]; and nothing in this act shall be construed to apply to any work done by, nor shall any compensation be payable under this Act to, the master, officers or any member of the crew of any vessel used in interstate or foreign commerce which said vessel is not registered or enrolled in the State of Louisiana.

"2. Whenever an employee of a common carrier engaged in interstate or foreign commerce by railroad shall sustain a personal injury by accident, arising out of and in the course of his employment, resulting in his disability or death, it shall be presumed prima facie that such employer was, at the time of the accident, engaged in such commerce."

As we have said, all of paragraph 2 is omitted from section 30 as amended by the act of 1920; and, in substitution for the words which we have marked off in brackets, this is said:

"provided that the employee of such common carrier was injured or killed while so employed; but if the injury or killing of an employee of a railroad occurs while the employer and employee are both engaged and employed at the time in an intrastate operation or movement and said movement or operation is not controlled or governed by the laws, rule of liability or method of compensation which has been or may be, established by the Congress of the United States, then this Act shall govern and compensation shall be recovered hereunder."

Our conclusion is that the state statute is applicable to this case.

The judgment of the district court and of the Court of Appeal is reversed, and it is now ordered, adjudged, and decreed that

the plaintiff, Mrs. Esther Francis, shall recover of and from the defendant, Louisiana & Arkansas Railway Company, compensation at the rate of $3 per week, for 300 weeks, commencing on the 2d day of June, 1933, and that all past-due installments shall be collectible when this decree becomes final, together with interest at 5 per cent. per annum on each installment from the date on which it was due, commencing on the 2d day of June, 1933; and that plaintiff shall recover of and from the defendant the additional sum of $144, with interest at 5 per cent. per annum from judicial demand, that is, from the 26th day of May, 1934, and all costs of this suit.

PONDER, J., recused.