In this suit, plaintiff seeks to recover compensation under the Louisiana Workmen's Compensation Law (Act No. 20 of 1914, as amended) at the maximum rate of $20 per week for a period of 400 weeks for total permanent disability resulting from an accident on May 12, 1939, in which he lost his right hand.
There is no dispute as to plaintiff's employment and his rate of pay at the time of the accident, about the injuries he received, that plaintiff was performing services arising out of and incidental of his employment in the course of defendant's business, trade and occupation, and that plaintiff is unable to perform the kind of work he was performing before the accident. The only issue in the case is whether or not plaintiff was engaged, at the time of his injury, in intrastate or interstate transportation. If the former, then the Louisiana Statute applies and he is entitled to recover compensation as claimed; but if the latter then his claim is controlled by the Federal Employers' Liability Law, 45 U.S.C.A. § 51 et seq. and he cannot recover under the State Statute.
At the beginning of the trial, plaintiff interposed an objection to all evidence sought to be offered on the part of the defendant to show that it was engaged in interstate commerce at the time of the injury for the reason that the defendant, in its answer, had not alleged that it was so engaged. The Court reserved its ruling and proceeded to hear the testimony on the issue presented. After submission of the case, the trial judge overruled the objection, and rendered judgment in favor of defendant, dismissing plaintiff's suit without prejudice. Plaintiff prosecutes this appeal.
In this court, plaintiff complains of the ruling of the lower Court on his objection to the introduction of evidence by the defendant to show that it was engaged in interstate commerce, and contends that the objection should have been sustained. In view of the conclusions we have reached in this case, we deem it unnecessary to pass upon the objection and ruling thereon.
The plaintiff, at the time of his injury, was yardmaster of the railroad company at Morgan City, and his duties in that connection were to handle and place cars in switching operations in accordance with orders given by the station agent. On the day of the injury, he was in charge of engine 54 and a switch crew operating out of Morgan City and had received instructions to spot two cars of oil at Berwick, just across the Atchafalaya River from Morgan City. One of these cars of oil was to be placed on a switch track for the Oyster Shell Company at Berwick. In addition to placing these two tank cars, plaintiff had orders to pull out to the main line a car from the premises of this company, if loaded, to be placed on the main line and there to be picked up by a through east bound freight train. This car was consigned by the Oyster Shell Company to Atlanta Flour and Grain Company of Atlanta, Georgia, via other interstate carriers.
In order to understand the switching operations necessary to carry out these orders, it is necessary to describe the location of the cars involved in the operation and the switch tracks leading to the premises of the Oyster Shell Company. There is a single switch track leading from *Page 261 
the main line at Berwick in a southerly direction for several hundred feet to the Shell Company's mill, where the shells are crushed, which track is referred to as track No. 1. About halfway from the main line to the said crushing plant, there is another switch leading to the right to the Shell Company's calcium or loading plant, which is called track No 2. On track No. 2, at the calcium or loading plant, was located a car, which after the accident, was found to be loaded with oyster shell dust consigned to Atlanta, Georgia, and immediately behind this car were two empty cars in the process of being loaded. On track No. 1, at the place where the oil car was to be spotted or delivered at the crushing plant, were two empty cars, which, in accordance with the rules and regulations of the defendant company, were to be placed behind the loaded car and the two empties on track No. 2 at the loading plant. Upon plaintiff reaching the junction of the two switch tracks, he perceived the two empty cars on track No. 1 at the crushing plant necessitating their removal and spotting them at the calcium or loading plant. He, riding on the oil car in the lead, then ordered the engine and oil car to proceed on track No. 2 toward the loaded car and the two empties. Just before reaching this loaded car, he signaled for a slow down, stepped off the oil car, and in so doing his clothes caught on a bolt on this oil car, causing him to fall in front of the car where he was run over and his right hand mashed so severely that it had to be amputated.
It will thus be seen that the plaintiff was injured prior to his reaching the loaded car and the empties at the loading plant, and while he was riding on this oil tank car. The oil car was a local shipment from Baton Rouge to the Oyster Company at Berwick. It is shown that in order for the plaintiff to complete the operation in carrying out his order to spot this oil tank oil car, he would have had to couple the loaded interstate car and the two empties behind it and pull out of track No 2 all these cars together with the oil car back to the junction; then back all these cars down track No. 1 to the crushing plant, coupling onto the two empty cars standing at that point. Thereafter, he was to pull this string of cars back to the junction, then back on track No. 2 down to the loading plant, leaving the four empties there and spotting the interstate car on track No. 2 at a safe place near the junction of the switches and then back the oil car down on track No. 1 to the crushing plant, its final destination. After all of this was done, he was to return to the junction, return on track No 2, couple onto the interstate car and pull it onto the main line to be picked up by an eastbound train.
While this appears to be a lot of unnecessary switching, yet from the testimony of Messrs. Gorman and Reynaud, defendant's witnesses, and Bigler, the plaintiff, together with the map introduced and the location of the cars, we are convinced that this was the proper operation.
We now come to the question at issue. Our conclusion is that the trial judge erred in holding that the plaintiff was engaged in interstate commerce at the time of the injury. In fact, it seems to us that the very case on which he relies in support of his conclusion does not support his holding.
It is evident that plaintiff started from Morgan City to Berwick to accomplish two principal duties: First, to spot the intrastate tank car on switch track No. 1 at the Oyster Shell Company's crushing plant (and, of course, to spot another intrastate oil tank car for another company, but which has no immediate bearing on this question). After having completed this duty, his second duty was to bring the loaded interstate car to the main line to be picked up by the next east bound freight train. The trial judge was in error in holding that when plaintiff was injured while backing up to couple onto this interstate car and the two empties back of it that he had then begun his initial movement to bring the interstate car out to the main line. It is clear to us, and is so indicated by the testimony of the railroad men who testified in the case, that the purpose of coupling onto this car and the two empties back of it was merely to expedite the placing of the oil tank car on switch track No 1. Indeed, when plaintiff was preparing to couple onto this interstate car and two empties back of it, his purpose was to expedite the entire operation and at that time he was not engaged in the primary and dominant purpose of pulling the interstate car out of this switch track in order to get it on the main line. *Page 262 
In our opinion, the case of New York Central H.R.R. Co. v. Carr, 238 U.S. 260, 35 S.Ct. 780, 59 L.Ed. 1298, which the trial judge cites in support of his conclusion, bears out the contention of the plaintiff rather than that of the defendant. In fact, a careful reading of that case indicates that it is the particular service as a whole which the employee is doing when injured that controls and not the merely incidental and collateral acts which he does in order to expedite the main service in which he is engaged. In that case, it is clear that the principal duty of the employee was his connection with the operation of an interstate train and the mere fact that he was injured while spotting two intrastate cars on a siding in order to expedite the movement of the interstate train did not take his service out of its interstate character. The setting of the brake, during which he was injured, was necessary in order that the engine to which the cars were attached might return to continue its trip with the interstate shipment. Applying the same principle here where the opposite state of facts exists, the service in which the plaintiff was engaged at the time of the injury was spotting this local car at its proper place on track No. 1; the moving of the interstate car along with the empty cars was merely incidental to the principal duty and to expedite the operation. His first duty was to spot the tank car and his last duty was to take the interstate car back with him on his return trip to the main line.
This conclusion is supported by the principle laid down in Illinois Cent. R. Co. v. Behrens, 233 U.S. 473, 34 S.Ct. 646, 58 L.Ed. 1051, Ann.Cas.1914C, 163. This case indicates that the criterion to be used is the particular duty or service in which the employee is engaged at the time of the injury and not the duty or service in which he is to engage after he completes that duty. To be sure, as some of the courts have said, if the service which the employee expects to render after completing his present duty is to be a criterion, then practically all railroad operations could be construed as involving interstate commerce.
In Corpus Juris Secundum, Vol. 15, under the title "Commerce", § 51, subd. e, "Switching and Yard Services", at pages 356 and 357, we find the rule stated as follows: "On the other hand, where the dominant task was the intra-state movement the employee is not within the act [the Federal Employers' Liability Act] while * * * moving partly loaded interstate cars merely to expedite the moving of intra-state cars," citing East St. Louis Junction R. Co. v. Armour Co., 247 Ill. App. 528; Roach v. Chicago, R.I. P.R. Co., 227 Ill. App. 240. We see no distinction in the moving of a partly loaded car from one wholly loaded when such car is being moved merely to expedite the spotting or placing of an intrastate car. It appears to us that such was the actual case, that is, the only movement of the interstate car which was attempted to be made at the time of his injury, was for the purpose of expediting and completing the movement of the intrastate oil car.
The two last cases which this court had involving this subject matter in which we denied recovery of compensation on the ground that the plaintiffs were engaged in interstate commerce at the time of their injuries and were excluded from the benefits of the compensation law of the state under section 30 of that law as amended by Act No. 244 of 1920 were reversed by the Supreme Court. We refer to the cases of Fluitt v. New Orleans, T. M.R. Co., 187 La. 87, 174 So. 163; Francis v. Louisiana A.R. Co.,187 La. 975, 175 So. 638.
From the recent decisions, we would say that there is a tendency to interpret the law so as to give the employee the right to recover compensation under the state statute if there exist any doubt as to the nature of his work at the time of the injury. Our conclusion in this case, however, is based upon our understanding of the holding of both the Federal and State Courts.
For these reasons, the judgment of the lower court is reversed. It is now ordered, adjudged and decreed that the plaintiff, Arthur F. Bigler, shall recover of and from the defendant, Texas New Orleans Railroad Company, compensation at the rate of $20 per week, for not exceeding 400 weeks, commencing on the 19th day of May, 1939, together with interest at 5 per cent per annum on each installment from the date when due, and all costs of this suit. *Page 263