No. 35,388

CATHERINE PIGGUE, *Appellant*, v. L. W. BALDWIN and GUY A. THOMPSON, Trustees for the Missouri Pacific Railroad Company, and MISSOURI PACIFIC RAILROAD COMPANY, *Appellees*.

(121 P. 2d 183)

'Opinion filed January 24, 1942.

*Harold McGugin*, of Coffeyville, for the appellant.

*W. P. Waggener, O. P. May, B. P. Waggener* and *Ralph M. Hope*, all of Atchison, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: The claimant filed this suit as a proceeding under the workmen's compensation act to recover for the death of her husband, who was an employee of the respondent railroad company. The commissioner made an award in favor of the claimant which was appealed to the district court. The district court held that claimant's husband at the time of his death was engaged in work which brought him within the provisions of the federal employers' liability

act; consequently, that the state workmen's compensation act did not apply and the court was without jurisdiction to award compensation to the claimant. From that judgment claimant has appealed.

If the district court was correct in its conclusion as to the application of the federal employers' liability act, it will be unnecessary to consider other questions argued in the briefs.

Claimant's husband was employed by respondent in its yards at Coffeyville to clean up its tracks. His general duty was to clean up cinders, papers and anything else which got on the tracks and which if allowed to remain might hinder the use of the tracks by the trains, engines and cars passing over them.

At the time of his death the workman was removing a pile of cinders with a shovel and wheelbarrow from a track in the yards which was known as the "receiving track." On December 12, 1940, the workman had eaten his lunch between 12 and 1 o'clock. Some time between 1 and 2 o'clock, while he was shoveling up this pile of cinders which had been left by an engine on the "receiving track," the workman was seen to suddenly slump to the ground. He died within a few moments after being picked up by fellow employees.

If the workman in this case at the time of his death was engaged in work which brought him under the federal employers' liability act, this proceeding under the state workmen's compensation act cannot be maintained. (*Krouse v. Lowden,* 153 Kan. 181, 184, 109 P. 2d 138.)

Another proposition which should be noted at the outset is that the question of whether this employee was covered by the federal act depends upon the nature of his work at the time of his death, and not upon the nature of the work which he generally or usually performed. (*Krouse v. Lowden,* supra.)

The evidence conclusively shows that the "receiving track" upon which claimant's husband was at work at the time of his death was the track over which freight cars received from the "Katy and Santa Fe" were switched to the Missouri Pacific. Many of these cars came from Kansas City, Mo., and other points; some were destined for the industries of Coffeyville, while others, destined for points further south, were taken on down into the yards to be made up into trains going south into Oklahoma. The Oklahoma state line is approximately two miles south of the place where the employee died. There can be little doubt under this state of the facts but that the track upon which claimant's husband was working did carry interstate

traffic, and the fact that it may have also carried intrastate traffic is of little moment in this case, since a railroad track does not cease to be an instrumentality of interstate commerce simply because it is also used for intrastate traffic. (*Coil v. Payne*, 114 Kan. 636, 220 Pac. 172; *Pedersen v. Del. Lack & West. R. R.*, 229 U. S. 146; *New York Cent. R. R. Co. v. Porter*, 249 U. S. 168; *Rader v. Baltimore & O. R. Co.*, 108 F. 2d 980, certiorari denied, 309 U. S. 682.) As already noted, the purpose of removing the cinders and refuse from the track was to keep it in a usable condition. The evidence shows that it was the practice to keep the "receiving track" open, and boxcars were not left standing thereon.

The federal employers' liability act was amended as of August 11, 1939 (53 U. S. Stat. 1404, 45 U. S. C. A. 51, *et seq.*). Since claimant's husband died December 12, 1940, the question of whether his work would have brought him within the act before the amendment need not be considered. The 1939 amendment provides:

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this act and of an act entitled 'An act relating to the liability of common carriers by railroad to their employees in certain cases' (approved April 22, 1908), as the same has been or may hereafter be amended." (53 U. S. Stat. 1404, 45 U. S. C. A. 51.)

One of the purposes of the amendment of the act as above indicated was to extend the provisions of the federal act to cover all employees of carriers whose work "shall, in any way directly or closely and substantially affect" interstate commerce. The words used in the amendment are words often used by the supreme court of the United States in discussing interstate commerce and particularly in defining instrumentalities and things which may be technically in intrastate commerce, but which are so related to interstate commerce that they are governed and regulated by acts of congress based upon its power to regulate interstate commerce. It would appear from the reports of the congressional committees which considered the amendment that congress intentionally used these words with the purpose of expanding the application of the act. The congressional debates are referred to and set out in *Ermin v. Pennsylvania R. Co.*, 36 Fed. Supp. 936, and *Southern Pac. Co. v. Industrial Accident Commission*, (Cal. App.) 113 P. 2d 763.

The above cases are the only cases cited to us as having passed upon the 1939 amendment, and our own research has discovered no others. In the Ermin case the court held that a brakeman who at the time of his injury was moving dead engines from one place to another within the same state was within the provisions of the federal act as amended. The court said:

"The discussions in Congress indicate that it was the intent of the law-makers to bring within the scope of the federal employers' liability act all employees whose work at the time of injury was not in actual interstate trans- portation or a part of it, but any part of whose work was in furtherance of interstate commerce, or in any way affected such commerce directly, closely and substantially. The bill, as introduced in the senate, provided that an employee was to be considered as engaged in interstate commerce if his duties 'in any way' affected interstate commerce. At one of the hearings before a subcommittee of the committee on the judiciary of the senate, the committee, at the suggestion of Senator Austin, amended this provision by substituting the words 'or in any way directly, or closely and substantially affect such com-merce.' Senator Austin said: 'Now, on page 2, lines 18 and 19, occur the words "or in any way." Unless I am convinced I ought not to do that for some good reason, I think I will move to substitute for those words that occur and recur in many cases of recent date as defining what kind of effect on interstate is comprehended by the commerce clause of the constitution. Those are the words, "directly, closely and substantially." I would substitute those words for the words "or in any way." '

"And again: 'Senator Austin: My amendment was to substitute for the words "or in any way" the words "directly, closely and substantially." That is the law as it is interpreted by the supreme court of the United States in *National Labor Relations Board against Jones & Laughlin Steel Corporation* [301 U. S. 1, 57 S. Ct. 615, 81 L. Ed. 893, 108 A. L. R. 1352]; in the bituminous coal conservation act of 1935, in connection with N. R. A. codes, and in *Carter versus Carter Coal Co. and Others* [298 U. S. 238, 56 S. Ct. 855, 80 L. Ed. 1160].'

"It developed at many of the trials of actions brought by railroad employees that they were not informed by the railroad whether or not at the time of the accident they were actually engaged in interstate commerce, and as a matter of fact, few of them knew at the moment when the accident occurred whether they were engaged in interstate or intrastate commerce.

"There are multitudinous decisions raising hair-splitting interpretations as to whether or not the employee at the time of his accident was actually en-gaged in interstate commerce. It was to avoid this difficulty that Congress enacted the amendment. It was, undoubtedly, the intent of Congress to in-clude within the scope of the federal employers' liability act all employees, even those performing intrastate services whose employment meets the require-ments of the act. . . ." (p. 940.)

In the California case it was held that an employee who was en-gaged in repairing a "combination truck and boom car" was within

the provisions of the federal act and could not maintain a claim under the state workmen's compensation act. The recent amendment was applied to the facts of that case in the following language of the opinion:

"Applying the principles to the facts in the instant case, it is settled law that the railroad tracks on which a company engaged in interstate commerce operates its trains are a part of interstate commerce. (*Pedersen v. Delaware, Lack. & West. R. R.*, 229 U. S. 146, 151, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153.) It is also settled law that the matter of keeping those tracks clear and safe for the transportation of commerce is also interstate commerce. (*Rader v. Baltimore & O. R. Co.*, 7 Cir., 108 F. 2d 980, 985.) A 'combination truck and boom car' has no other function than clearing tracks. One who is repairing such a car is clearly performing a duty which is '. . . the furtherance of interstate or foreign commerce . . .' Moreover, his work does '. . . directly or closely and substantially affect such commerce.' (53 U. S. Stat. 1404, 45 U. S. C. A. § 51.)" (p. 767.)

Under the amendment to the federal employers' liability act any employee of a carrier, any part of whose duties shall be the furtherance of interstate commerce, or shall in any way directly or closely and substantially affect such commerce, is considered as employed by such carrier in interstate commerce and is entitled to the benefits of the act. Clearly, claimant's husband was covered by the provisions of the federal employers' liability act as amended. It follows that the district court was correct in holding it had no jurisdiction under the state workmen's compensation act to award compensation to the plaintiff.

The judgment is affirmed.

SMITH, J. (dissenting): I cannot agree with the conclusion reached by the majority in this case. My idea is that the work being done by claimant in this case was that of general janitor work about the railroad yards. The work in which he was engaged at the time of his injury was removing a small pile of cinders which had been dropped on the track in question by a locomotive. I cannot persuade myself that this act directly, closely or substantially affected or furthered interstate commerce.