### EDWARDS v. BALTIMORE & O. R. CO.
#### No. 7976.

Circuit Court of Appeals, Seventh Circuit.

Nov. 23, 1942.

Edward W. Rawlins, James F. Wright, and E. W. Lademann, all of Chicago, Ill. (Fay Warren Johnson, of Chicago, Ill., of counsel), for appellant.

Louis P. Miller, Joseph D. Ryan, and Edmund M. Sinnott, all of Chicago, Ill., for appellee.

Before MAJOR, MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant seeks to reverse a judgment for plaintiff under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for personal injuries sustained by the latter caused by alleged negligence of defendant, insisting that plaintiff submitted no substantial evidence to support the verdict.

Plaintiff was employed by defendant as a machinist's helper, and, in that capacity, at the time of the accident, was assisting King, a machinist, in repairing an automatic stoker in one of defendant's locomotives. The stoker had jammed, and the locomotive, on reaching defendant's shops, was put to one side to afford opportunity for repair. The device, actuated by steam power from the boiler, consisted of a long tube running from the tender to the fire box, where it divided into two upright tubes or barrels. In both tube and barrels, screws operated to crush and convey the coal to the firebox door and there it was blown into the firebox by steam jets. The motive power of the stoker was supplied by steam operating, in a cylinder, a piston which by gears, turned screws. Admission of steam was controlled by a valve between the boiler and the cylinder, and to secure additional intake, a booster valve was supplied. At the time King and plaintiff were working on the stoker, the fire in the locomotive had not been drawn and the steam pressure in the boiler stood at about 150 pounds.

After vainly attempting to get the device into operation by opening and closing the operating and booster valves and by endeavoring to turn the screw with a pipe wrench, the two workmen removed the clean-out plate at the base of one of the

barrels in order to locate and remove the obstruction. This plate bore a stamped warning to "keep hands out." After removing the coal from the barrel by means of a chisel and hook, King shut off the steam, reached into the barrel, felt around and told plaintiff he felt an obstruction. There is a conflict in the testimony as to what next occurred. Plaintiff swore that King told him to reach in and see if he could ascertain what the obstruction was. King testified that he did not ask plaintiff to reach into the barrel. It is undisputed, however, that plaintiff put his hand into the opening and apparently loosened the obstruction sufficiently to remove the impediment and to allow the screw to turn and catch his hand and arm. A surgeon amputated plaintiff's arm just above the elbow in order to free him.

The Federal Employers' Liability Act as amended in 1939, 45 U.S.C.A. § 51, provides: "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *." Without negligence on the part of the carrier or one of its employees no recovery may be had. The mere happening of an accident is not sufficient. New Orleans & N. E. R. R. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167; San Antonio & A. & P. Ry. v. Wagner, 241 U.S. 476, 36 S.Ct. 626, 60 L.Ed. 1110; Southern Ry. v. Gray, 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030; Schaefer v. Lowden, 147 Kan. 520, 78 P.2d 48.

That the injured party is guilty of contributory negligence does not bar recovery, but serves merely to diminish damages. 45 U.S.C.A. § 53; Chicago, R. I. & P. Ry. v. Ward, 252 U.S. 18, 40 S.Ct. 275, 64 L.Ed. 430; New York, C. & St. L. R. R. v. Niebel, 6 Cir., 214 F. 952. Furthermore, if negligence of the carrier causes the injury, "in whole or in part," the employee "shall not be held to have assumed the risks of his employment." 45 U.S.C.A. § 54. To succeed, the injured party must show a breach of duty owed by defendant to him in respect to the place where he was injured, and injuries resulting "in whole or in part" proximately from such breach.

Delaware, L. & W. R. R. v. Koske, 279 U.S. 7, 49 S.Ct. 202, 73 L.Ed. 578.

Issues dependent on the credibility of witnesses, and the effect or weight of evidence, are for the jury. Where uncertainty as to negligence arises from a conflict in testimony, the question is not one of law, but of fact. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Richmond & Danville, R. R. v. Powers, 149 U.S. 43, 13 S.Ct. 748, 37 L.Ed. 642. Thus, if there is substantial evidence to support the verdict, we may not substitute our judgment. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; Columbian Nat. Life Ins. Co. v. Comfort, 8 Cir., 84 F.2d 291.

There was evidence that plaintiff was under King's direction and that his work was controlled by King. Indeed, the term "mechanic's helper" implies that plaintiff, in the absence of all other vice-principals, was under the supervision of the mechanic. Plaintiff's evidence tended to prove also that the accident was due to the action of residual steam remaining in the cylinder after the valves were shut off and exerting such pressure on the piston as to turn the screw when the obstruction was loosened and that the danger of such an occurrence could have been averted by the opening of draincocks in the cylinder thereby releasing the residuary steam. King admitted that he was aware of the possible consequences of the situation and that he did nothing to avert them and did not warn plaintiff of the danger or that the screw might move if the obstruction was removed. See New York, C. & St. L. v. Niebel, 6 Cir., 214 F. 952. In addition, plaintiff testified that King directed him to put his hand into the barrel and ascertain what the obstruction was.

Defendant insists that plaintiff, having been a mechanic's helper for some years and having at times worked on stokers, was, or should have been, well aware of the danger involved in reaching into the barrel and that his doing so was negligence constituting the sole cause of the injury, thereby relieving defendant of any liability. Schaefer v. Lowden, 147 Kan. 520, 78 P.2d 48; Delaware R. R. v. Koske, 279 U.S. 7, 49 S.Ct. 202, 73 L.Ed. 578; Atlantic Coast Line v. Davis, 279 U.S. 34, 49 S.Ct. 210, 73 L.Ed. 601. The evidence is, however, that if plaintiff possessed any knowledge of mechanics, he had picked

it up casually in association with fellow workmen and that he had no actual mechanical training. He had progressed in school only to the fifth grade. He had wiped engines and performed common labor but at no time had he worked as a mechanic. He was a colored workman, a helper who had occasionally aided others in removing obstructions in stokers. But there is no clear proof that he knew anything about the existence of residuary steam in the cylinder; that such steam was present and had not been drained or that it could or would force the piston, thus causing the screw to turn, if the obstruction was loosened. Plaintiff had seen King reach into the barrel, and it may well be that he relied on King's superior knowledge and experience. Nothing indicates clearly and satisfactorily that the dangerous condition was so obvious, or the negligence of King so evident, that plaintiff knew or appreciated the danger to be incurred in putting his hand in the barrel. The action of King in shutting off the steam valves and reaching into the barrel might well have lulled plaintiff into a belief that it was entirely safe for him to proceed.

. [9] It is further argued, however, that the warning stamped on the clean-out plate to keep hands out of the barrel was notice of danger. But it is rightly arguable, if not clear, that this warning was intended for persons other than those engaged to repair the interior of the barrel. How otherwise could repairmen locate and remove an obstruction?

In the cases upon which defendant relies, either no evidence of negligence on the part of the carrier or its employees was presented, or the situation was such that the alleged negligent act of defendant could not have caused the injury in whole or in part. True, plaintiff's act in loosening the obstruction directly caused the screw to turn. But there is substantial evidence that it was because of King's negligence that the stoker was left in such a condition that there was danger of the screw turning and that this dangerous condition was the moving cause of what occurred.

 The controverted evidence as to plaintiff's and defendant's acts was such as to support a finding that defendant or its machinist acted negligently, and that this negligence caused the injury.

Defendant further claims that the court had no jurisdiction, since plaintiff was not in any way concerned with interstate commerce. The evidence shows that the engine had been in interstate commerce during the day. Although at the time it was not in actual use, it was ready to return to service as soon as the stoker was repaired. The fire was still burning and the steam pressure was being maintained.

The statute, broadened by the 1939 amendment, now reads: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

 Despite any question as to whether plaintiff might have recovered under the original act (see New York Central Ry. v. Marcone, 281 U.S. 345, 50 S.Ct. 294, 74 L.Ed. 892), it is clear that he is within the scope of the amendment. Under the original statute experience demonstrated continued difficulty in ascertaining when the work of an employee was part of interstate commerce. The amendment, much wider in scope, was inspired by a desire to avoid such confusion. Congress' intent to include any employee who performs services which in any way further or affect interstate commerce is clear. Ermin v. Pennsylvania Ry., D.C.N.Y., 36 F.Supp. 936; Southern Pac. Co. v. Ind. Acc. Comm., Cal.App. 113 P.2d 768, 770, affirmed by California Supreme Court in 19 Cal.2d 883, 120 P.2d 888; Piggue v. Baldwin, 154 Kan. 708, 121 P.2d 183; Louisville & N. Co. v. Potts, Tenn.Sup., 158 S.W.2d 729. Inasmuch as this locomotive was used in interstate commerce and was destined to resume such service as soon as repaired, plaintiff, engaged in repairing it and fitting it for further commerce, thereby furthered and substantially affected interstate commerce within the meaning of the law.

The judgment is affirmed.