The facts involved in this case are set out in the following stipulation, upon which the case was tried:
"It is agreed that this cause shall be tried on the following statement of facts, which is agreed to by counsel for both plaintiff and defendant, to-wit:
"Oscar Rainwater was employed by the Trustees of The Chicago, Rock Island and Pacific Railway Company on or about July 20, 1943 as a member of an extra gang of laborers who, under the direction of the Section Foreman at Winnfield, Winn Parish, La., were engaged in hauling posts from the nearby woods and loading them on railroad cars for transportation from a point near Winnfield in Winn Parish, Louisiana.
"The posts belonged to defendant and were intended for use as piling and were to be incorporated into and used in repairing defendants' road bed at various points in its system which is operated as a railroad engaged in interstate commerce serving several states.
"On the day above mentioned plaintiff's right eye was accidentally injured while loading some of the piling into cars. It is not known what the destination was of the particular car being loaded at the time of the injury, but plaintiff's duties at the time of his injury required him, with the other members of his gang, to load six railroad cars, three of which were actually shipped to destinations in Louisiana and three of which were actually shipped to destinations outside of the State of Louisiana.
"If plaintiff is entitled to recover under the Workmen's Compensation Laws of the State of Louisiana he is entitled to receive compensation payments of $14.35 per week not to exceed 50 weeks, having lost one-half the use of one eye as a result of said injury; otherwise plaintiff is not entitled to recover at all."
The defense is that at the time of the injury plaintiff was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act, 45 U.S.C.A. § 51, and, for this reason, was not entitled to recover under the Louisiana statute. This question of law is the sole and only point involved and the decision of the case must rest upon the determination thereof.
There was judgment below in favor of plaintiff, the Judge of the District Court being of the opinion that plaintiff was not engaged in interstate commerce within the meaning, intent and purpose of the Federal statute. From this judgment defendant appeals.
[1] In view of the amendment, effective August 11, 1939, of the applicable section of the Federal Employers' Liability Act, it is obvious that the jurisprudence on this particular point prior thereto is not applicable. For this reason we do not feel that the Louisiana cases of Francis v. Louisiana A. R. Co.,187 La. 975, 175 So. 638, 640, and Bigler v. Texas N. O. R. Co., La. App., 2 So.2d 259, which involve injuries occurring prior to the effective date of the amendment, are applicable. Both of these cases were cited by the learned Judge of the District Court in the reasons assigned for his judgment. The case of Lawrence v. Rutland R. Co., 112 Vt. 523, 28 A.2d 488, 143 A.L.R. 476, was also cited in support of the judgment rendered. This case did involve an injury suffered after the effective date of the amendment, but, in our opinion, involved a decisive point which is not present in the case before us. In the Lawrence case the plaintiff was injured while operating a motor weeder on the right-of-way of the defendant railway company, by means of which operation the right-of-way was being cleared of noxious weeds. It appears that this operation was undertaken in compliance with a requirement of the laws of the State of Vermont. *Page 430 
The opinion of the Court stated that the purpose of the weeding was the carrying out of the statute and not in furtherance of interstate commerce. Therefore, it is plain that the injury occurred in the course of acts which had no bearing whatsoever upon interstate commerce, but which were being performed under the compulsion of police regulations of the State of Vermont.
In order to properly understand the questions before us, it is desirable to set out the applicable provision of the Federal Act as written prior to 1939, together with the amendment.
Section 51 of Title 45, U.S.C.A., prior to 1939, read as follows: "Section 51. Liability of common carriers by railroad, in interstate or foreign commerce, for injuries to employees from negligence. Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. (Apr. 22, 1908, c. 149, § 1, 35 Stat. 65.)"
Section 51 of Title 45 U.S.C.A., as amended August 11, 1939, reads:
"§ 51. Liability of common carriers by railroad, in interstate or foreign commerce, for injuries to employees from negligence; definition of employees.
"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act and of an Act entitled 'An Act relating to the liability of common carriers by railroad to their employees in certain cases' (approved April 22, 1908), as the same has been or may hereafter be amended. [As amended] Aug. 11, 1939, c. 685, § 1, 53 Stat. 1404."
In the case of Ermin v. Pennsylvania R. Co., 36 F. Supp. 936, the district Judge of the Federal District Court for the Eastern District of New York in his opinion, after commenting upon the discussions in Congress with reference to the amendment in question, reached the conclusion that it was the intent of the Congress to include within the scope of the Federal Employers' Liability Act all employees, even those performing intrastate services whose employment met the requirements of the Act. In the case in question the plaintiff had been injured while engaged in the operation of switching "dead" engines from Altoona, Pa., to Hollidaysburg, Pa., to await repair orders. Notwithstanding the fact that this movement was intrastate, it was shown that upon completion of repairs the equipment in question was to be used in both interstate and intrastate transportation. Plaintiff was held to come within the purview of the amendment of the Federal Act.
In Edwards v. Baltimore O. R. Co., 131 F.2d 366, 369, the Circuit Court of Appeal *Page 431 
of the Seventh Circuit affirmed a judgment in favor of plaintiff, a mechanic's helper, who was injured while attempting to repair the stoker of a locomotive which was out of service for purpose of repair in defendant's shops. In its opinion the Court stated: "Despite any question as to whether plaintiff might have recovered under the original act * * * it is clear that he is within the scope of the amendment. Under the original statute experience demonstrated continued difficulty in ascertaining when the work of an employee was part of interstate commerce. The amendment, much wider in scope, was inspired by a desire to avoid such confusion. Congress' intent to include any employee who performs services which in any way further or affect interstate commerce is clear. Ermin v. Pennsylvania R. [Co.], D.C.N.Y., 36 F. Supp. 936; Southern Pac. Co. v. Industrial Acc. Comm., Cal.App., 113 P.2d 768, 770, affirmed by California Supreme Court in19 Cal.2d 283, 120 P.2d 888; Piggue v. Baldwin, 154 Kan. 708, 121 P.2d 183; Louisville N. Co. v. Potts [178 Tenn. 425],158 S.W.2d 729. Inasmuch as this locomotive was used in interstate commerce and was destined to resume such service as soon as repaired, plaintiff, engaged in repairing it and fitting it for further commerce, thereby furthered and substantially affected interstate commerce within the meaning of the law."
[2] In the case before us the piling, which plaintiff was engaged in loading on the cars of the defendant railway at the time of the accident, was destined for use in repairing defendant's roadway at various points on its line. Certainly, maintenance and repair of road beds and rails are necessary in furtherance of interstate commerce. Materials necessary to such repairs must be loaded before they can be transported to the points at which they are to be used. Even proof that the particular poles loaded on a particular car were designed for an intrastate destination, in our opinion, would not change the conclusion that such materials were to be used in furtherance of interstate commerce, and that all acts in connection with the operations of loading and transportation, therefore, directly, closely and substantially affected such commerce. We can come to no other conclusion than that plaintiff at the time of the accident was within the scope of the amendment to the Federal Employers' Liability Act.
We are not unaware of the fact that this decision may work a serious hardship upon this plaintiff, in that it may ultimately deprive him of compensation for the injury received. However, as has been observed before, it is not the province of the Courts to legislate. We are convinced that the Congress in the adoption of the amendment of 1939 was actuated by the desire to extend the protection of the Act to large classes of employees who were denied recovery by reason of hair-splitting distinctions as to the construction of interstate commerce employment under the provisions of the original act. If, in attempting to remedy one defect, while motivated by sincere interest in the welfare of employees, the Congress has inadvertently worked hardships upon certain employees under certain circumstances, the point should be called to its attention in order that such inequities might be corrected by future legislation. Since, under present laws, an injured employee has no alternative, no right of election, recovery must be claimed under the provisions, and only under the provisions, of the Federal Statute. For this reason, we are prevented from granting relief under the provisions of the Louisiana Statute, to which relief this plaintiff undoubtedly would be entitled were it not for the fact that, in our opinion, he must be regarded as having sustained injury while engaged in furtherance of interstate commerce.
For the reasons assigned, the judgment appealed from is reversed and set aside, and the demands of plaintiff are rejected at his cost. *Page 432