BRAINARD v. ATCHISON, TOPEKA & SANTA FE RY. CO.

No. 3440.

United States District Court
D. Kansas.

Jan. 5, 1950.

922

Hal M. Black, of Wichita, Kansas, and
Marion J. Hannigan, of Chicago, Illinois,
for the plaintiff.

W. E. Stanley, and William C. Hook
(Depew, Stanley, Weigand, Hook &. Curf-
man), of Wichita, Kansas, and Thomas J.
Barnett, Floyd J. Stuppi, and Philip E. Von
Ammon, of Chicago, Illinois, for the de-
fendant.

MELLOTT, District Judge.

Two questions are raised by, or are in-
cidental to, defendant's motion to dismiss:
(1) Is there extant an adjudication, bind-
ing upon this court, as plaintiff contends,
that he was engaged in interstate commerce
at the time of his injury and hence may
prosecute the instant suit to recover dam-
ages under the Federal Employers' Liabili-
ty Act?[1] (2) If not, do the stipulated facts
show that plaintiff was not engaged in in-
terstate commerce at the time of his in-
jury and therefore this court is without
jurisdiction, both plaintiff and defendant
being citizens and residents of the State of
Kansas?[2]

The facts are, by this reference, found to
be as stipulated. They will be summarized
later. At this juncture the court recites
briefly the history of the case to make the
first question understandable.

The suit was instituted by the filing of
a complaint in the United States District
Court for the Northern District of Illinois,
Eastern Division, on December 13, 1946,
seeking damages in the amount of $75,000.-
00 for injuries alleged to have been re-
ceived while working in defendant's rail-
mill at Newton, Kansas, on August 26,
1946. Answer was duly filed, in which it
was alleged, *inter alia*, that plaintiff "was
engaged in the performance of duties ex-
clusively intrastate while employed by the
defendant" and, since both parties were
citizens and residents of Kansas, that the
court lacked jurisdiction of the parties and
of the subject matter. Thereafter the par-
ties filed a stipulation, the important part
of which will be subsequently set out here-
in. Later a motion to transfer the cause
to this court under Section 1404(a) of the
United States Judicial Code[3] was filed and,

1. Title 45 U.S.C.A. § 51, Act of Apr. 22,
1908, c. 149, § 1, 35 Stat. 65, as amended
by the Act of Aug. 11, 1939, c. 685, § 1,
53 Stat. 1404.

2. Schneider v. Lehigh Valley R. Co., 2
Cir., 112 F.2d 712.

3. Title 28 U.S.C.A. § 1404 (a), Act of
June 25, 1948.

upon hearing, was denied December 6, 1948, 81 F.Supp. 211. During December 1948 the case was tried to a jury which, not having reached a verdict by 10:00 o'clock P.M. of December 16, 1948, was discharged. On motion of defendant it was ordered that briefs be filed on defendant's motion for the entry of a directed verdict at the close of all the evidence and on defendant's alternative motion to transfer the cause to the District of Kansas. On February 16, 1949 the court entered an order denying defendant's motion for a directed verdict but granting its alternative motion to transfer the cause to this court.

Upon brief plaintiff asserts:

"The United States District Court of Illinois decided * * * [the interstate commerce] issue, * * * [determined] that plaintiff was engaged in interstate commerce and transportation, and that his cause of action was within the provisions of the Employers' Liability Act * * *.

"The action commenced by the plaintiff in Illinois is still pending, notwithstanding the fact that it has been transferred to Kansas * * *. The stipulation of the parties and the order thereon is still in force and effect, and the issue of interstate commerce is now res adjudicata insofar as the trial court is concerned."

No case has been cited or found supporting that view. This court should, and will, give respectful consideration to the views expressed by another court of concurrent jurisdiction, especially when such court has passed upon an interlocutory matter being re-argued before it. But even if it be assumed that the United States District Court for the Northern District of Illinois had placed its ruling denying the motion for an instructed verdict squarely upon the view that plaintiff, under the stipulated facts, had been engaged in interstate commerce at the time his injury was received, such ruling would not be res judicata. No extended discussion of that term need be attempted. It suffices, for present purposes, to point out that there has been no "final judgment on the merits of a cause of action",[4] binding upon the parties and their privies in the case at bar. Hence no estoppel by judgment or collateral estoppel has occurred. In other words, an essential element of the plea of res judicata is lacking.

At the risk of didacticism, it seems that objection to this court's ruling upon the issue of interstate commerce could be bottomed only upon the doctrine of "law of the case." This, it has been said, is not "a rule of law limiting the power of the court to reopen what has been decided but rather as an expression of 'the practice of courts generally to refuse to reopen what has been decided * * *.'"[5] "The only restraint upon a second judge in passing upon an interlocutory issue decided by another judge in the same case is one of comity only, which in no way infringes upon the power of the second judge to act."[6] This court is therefore of the opinion, and now holds, that a negative answer should be made to the first question.

The stipulation covers, in some detail, plaintiff's prior employment. It recites that he is a citizen and resident of Kansas, that defendant is a Kansas corporation engaged in the business of interstate rail transportation, and that plaintiff, after having resigned from a position in defendant's water service department had been re-employed by it, on October 15, 1945, "as a shop laborer in the rail mill. On January 16, 1946, he was promoted to machinist's helper. On August 26, 1946, the date on which plaintiff allegedly sustained the injury which he has, he was employed by the defendant as a machinist's helper in the rail mill owned and operated by the defendant at Newton, Kansas. Plaintiff's duties at that time involved the assembly of railway switches and switch frogs. Some

4. Cf. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 719, 92 L.Ed. 898.

5. Connett et al. v. City of Jerseyville, 7 Cir., 110 F.2d 1015, 1018; Cf. Mess-inger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152.

6. Bowles v. Wilke, 7 Cir., 175 F.2d 35, 37.

of the component parts of these switches and frogs were salvaged from worn or damaged switches and frogs removed from defendant's railway system. Such salvaged component parts were reconditioned and retooled in the said rail mill. The remaining component parts necessary to the assembly of these switches and frogs were new. The assembled switches and frogs were stock piled at the rail mill. Orders were filled from such stock pile on requisition of defendant's General Storekeeper, to be shipped as required for installation at various points on defendant's railway system, including main lines, sidings and switch yard installations. Except in so far as the specifications of a particular switch or frog limits its installation to track requiring such specifications, the intended location or use of any particular switch or frog is not known at the time of assembly or delivery to the stock pile at defendant's rail mill. In August, 1946, and prior thereto, the said stock pile at defendant's rail mill was depleted with respect to certain items of material, including switches and frogs, and it was necessary to ship such items immediately upon assembly to fill current requisitions."

Notwithstanding a welter of court decisions, the question whether an employee of a railroad company is engaged in intrastate or interstate commerce at the time of his injury remains a difficult one. The amendment of 1939 [7] aided some, bringing within the coverage of the act employees who, while ordinarily engaged in the transportation of interstate commerce, might be temporarily divorced therefrom and engaged in intrastate operations at the time of injury.[8] But, as learned counsel for the defendant persuasively argue, courts must use care in applying the amendment to a given employment situation lest they extend it "to employment of an intrastate nature and thus render the amendment as so applied, unconstitutional as being a regulation of intrastate commerce." In other words, cause it to suffer the fate of the first act. Howard v. Illinois Cent. R. Co., 207 U.S. 463, 28 S.Ct. 141, 52 L.Ed. 297.

It would serve no good purpose to attempt extended discussion of the several cases decided by the Supreme Court under the act as it existed before the amendment. Most of them arose from injuries received by employees while working upon engines or rolling stock, temporarily withdrawn from service for repair. The essence of the test applied has been whether the employee, at the time of the injury, was "engaged in interstate transportation or in work so closely related to it as to be practically a part of it" [9]—whether his "occupation at the time of his injury in interstate transportation or work so closely related thereto as to be practically a part of it."[10] Having consistently in mind the implicit requirement that the employee, rather than the instrumentality upon which he is working, must be an integral part of commerce, the court has not hesitated to ask itself: Was the work being done by the employee independently of the interstate commerce in which the carrier was engaged or "was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier?"[11] When the last part of the questions thus posed was found to be the applicable portion the court has held that "the work of keeping such instrumentalities in a proper state of

---

7.  Act of Aug. 11, 1939, c. 685, § 1, 53 Stat. 1404.

8.  See report 661 of the committee on the Judiciary, United States Senate. See also reference to legislative history in Ermin v. Pennsylvania R. Co., D.C., 36 F.Supp. 936, 940. Cf. Piggue v. Baldwin, 154 Kan. 708, 121 P.2d 183.

9.  Industrial Accident Commission of State of California v. Davis, 259 U.S. 182, 187, 42 S.Ct. 489, 491, 66 L.Ed. 888.

10. New York, N. H. & H. R. Co. v. Bezue, 284 U.S. 415, 420, 52 S.Ct. 205, 207, 76 L.Ed. 370, 77 A.L.R. 1370; Cf. Shanks v. Delaware, L. & W. R. Co., 239 U.S. 556, 36 S.Ct. 188, 60 L.Ed. 436.

11. Pedersen v. Delaware, L. & W. R. Co., 229 U.S. 146, 151, 33 S.Ct. 648, 649, 57 L.Ed. 1125, Ann.Cas.1914C, 153.

repair while thus used * * * [was] so closely related to such commerce as to be in practice and in legal contemplation a part of it." [11]

The Supreme Court of Kansas, in a comparatively recent case, [12] held that a railway employee, injured while loading a barrel of oil on a truck, which oil was to fill lanterns and oil cans used in oiling the employers' road engines and machines, was engaged in interstate commerce. It referred to "a plethora" of decisions "holding that railway employes whose duties were of trivial character were nevertheless under the federal act in respect to their relations with their employers." Kansas cases are important here, not solely because of Eric R. Co. v. Thompkins.[13] This court should, if possible, avoid launching plaintiff into a fruitless quest for relief by requiring him to seek his remedy in the Kansas courts if none exists.

Learned counsel for plaintiff rest their argument that he was engaged in interstate commerce largely upon the view expressed by some courts that the amendment of 1939 should be given a "liberal construction" and that it "broadened the whole concept of interstate transportation as covered by the Federal Employers' Liability Act."[14] It cannot be gainsaid that the legislative history set out in the Ermin [14] case tends to support that view.[15] Without implying that it is unsound, this court is inclined to believe the Supreme Court of Illinois suggested the proper approach to the problem in Thomson v. Industrial Commission [16] when it said:

"Under the amendment, the test must be whether the activity in which the employee is engaged at the time of the accident, directly or closely and substantially affects interstate commerce."

Counsel for each side suggest inferences to be drawn from the stipulated facts. On behalf of defendant it is argued that since the assembled material is withdrawn on requisition of the general storekeeper and, even after being placed in the stock pile, may never be incorporated in any railway system, therefore the mill is "not unlike a manufacturer and supplier of railway parts and equipment." Plaintiff's counsel, on the other hand, state that the stipulated facts "warrant the inference that these switches or frogs were such as had been worn or damaged while in use on defendant's system of railroad and were being reconditioned for reinstallment * * as needed to replace other switches as they became worn, defective, unsafe or inefficient." The correct interpretation of the stipulated facts is probably intermediate the suggested extremes; but this court is of the view that it is closer to the one suggested by plaintiff.

"Plaintiff's duties" at the time of his injuries, "involved the assembly of railway switches and switch frogs." "In August, 1946,—[the injury occurring on August 26] —the * * * stock pile at defendant's rail mill was depleted with respect to certain items of material, including switches and frogs, and it was necessary to ship such items immediately upon assembly to fill current requisitions." So reads the stipulation. "Current requisitions", otherwise unexplained, seems to connote the replacement of many switches and frogs upon tracks used in interstate commerce, upon tracks used in both interstate and intrastate commerce, and perhaps upon some used only in intrastate commerce. Plaintiff's work being in connection with the "assembly" of such switches and frogs, it seems that he was engaged in "an activity * * * [which] directly or closely and

11. Pedersen v. Delaware, L. & W. R. Co., 229 U.S. 146, 151, 33 S.Ct. 648, 649, 57 L.Ed. 1125, Ann.Cas.1914C, 153.

12. Harris v. Missouri Pac. R. Co., 158 Kan. 679, 149 P.2d 342, 343.

13. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

14. Some of the cases apparently taking this view are: Ermin v. Pennsylvania R. Co., D.C., 36 F.Supp. 936; Agostino v. Pennsylvania R. Co., D.C., 50 F.Supp. 726; Zimmermann v. Scandrett, D.C., 57 F.Supp. 799; Scarborough v. Pennsylvania R. Co., 154 Pa.Super. 129, 35 A. 2d 603; Edwards v. Baltimore & O. R. Co., 7 Cir., 131 F.2d 366; and Shelton v. Thomson, 7 Cir., 148 F.2d 1.

15. See also Piggue v. Baldwin, 154 Kan. 708, 121 P.2d 183.

16. 380 Ill. 386, 44 N.E.2d 19, 23.

substantially affects interstate commerce." A "minor task, which \* \* \* [is] essentially a part of the larger one" of keeping in repair tracks used in interstate commerce—and such is the interpretation which this court thinks should be placed upon the stipulated facts—is, under the rationale of the decided cases, especially Pedersen v. Delaware, L. & W. R. Co., cited in footnote 11, interstate commerce.

The court is of the opinion, and now holds, that it has jurisdiction of the parties and of the subject of the action. Defendant's motion to dismiss is therefore denied.