In the Matter of the Claim of ERNEST WRIGHT, Respondent, against THE NEW YORK CENTRAL RAILROAD COMPANY, Employer and Self-Insurer, Appellant.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, March 4, 1942.

*Whalen, McNamee, Creble & Nichols [Charles E. Nichols of counsel], for the appellant.*

*John J. Bennett, Jr., Attorney-General [John F. Loehr, Assistant Attorney-General, of counsel; Joseph A. McLaughlin, Assistant Attorney-General, in charge], for the State Industrial Board, respondent.*

BLISS, J. Claimant usually worked in intrastate commerce for five days a week and in interstate commerce for one day a week. On November 22, 1939, when injured, he was engaged in intrastate commerce.

Previous to August 11, 1939, the nature of the work in which an interstate carrier's employee was engaged at the time of his injury or death determined whether the Federal Employers' Liability Act * applied and he was entitled to its benefits. (*Shanks*

* See U. S. Code, tit. 45, §§ 51-60.— [REP.

v. *D., L. & W. R. R. Co.*, 239 U. S. 556.) And there were many borderline decisions under the rule. A case would turn upon some slight differentiation in duty or operation, more apparent than real. There was much hair splitting and little certainty. It was to avoid all this and to give a fixity of application that Congress amended this act on August 11, 1939, to include " any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce." Thus the scope of the statute was broadened so as to include practically all employees of interstate carriers, including such employees as this claimant, and to do away with the borderline cases. Fine distinctions are no longer necessary. The act is now all inclusive and made so purposely. The language " any part of whose duties " is almost as broad as words can make it and we should apply it in the spirit in which it is written. Because of this new statute the State Industrial Board had no jurisdiction of this claim. The award should be reversed and the claim dismissed, with costs to appellant against the State Industrial Board.

HILL, P. J., and CRAPSER, J., concur; HEFFERNAN, J., dissents, in an opinion, in which FOSTER, J., concurs.

HEFFERNAN, J. (dissenting). The employer has appealed from a decision of the State Industrial Board awarding claimant $400 for serious facial disfigurement.

The facts are undisputed. Claimant was employed as a boilermaker. His work necessitated all kinds of repairs in connection with boilers. He was assigned to duty at the employer's Rensselaer engine house. His hours of employment were from four P. M. until midnight. For five days of each week the claimant was engaged in his work as a boilermaker. During that period he worked exclusively on engines which had been withdrawn from interstate transportation. On the sixth day of each week, when the boiler inspector had his day off, claimant acted in his stead and received additional compensation therefor. The duties of a boiler inspector, among others, pertain to engines engaged in interstate transportation.

In the early morning of November 22, 1939, appellant's engine No. 5327 hauling train No. 43 from Harmon northward, with cars in transit interstate, developed a leaking tank and was cut out at Albany and sent to the Rensselaer roundhouse for repairs. When claimant reported for duty on that day he was directed to make the necessary repairs to the disabled engine, which consisted of applying a patch to the leaking tank. This was the only engine on which claimant worked that day. At about nine-thirty P. M.

while claimant was burning rivets off the boiler with the aid of an acetylene torch a can of carbon exploded with resultant burns upon claimant's face, forehead and neck causing the disfigurement for which the award under review was made. At the time claimant sustained his injuries the repairs to the boiler had not been completed. They were completed at one A. M. on the following day and the engine was then assigned to relief work. Several hours later it was assigned to haul from Albany to Harmon train No. 82 which contained cars in transit from Toronto, Canada, to New York city.

The record discloses that claimant's principal duties related to heavy repair work — the only work with which he was familiar — on engines withdrawn from service. He testified that if he worked on several engines during any particular day those engines were definitely out of service.

The sole contention of appellant is that claimant, at the time of his injury, was engaged in interstate commerce and that consequently the claim is within the purview of the Federal Employers' Liability Act,* as amended by the act of Congress approved August 11, 1939. Except for that amendment this case would not be controlled by the basic statute. That act amends several sections. We are concerned only with the amendment to the first section, the pertinent provisions of which are:

" Sec. 51. Liability of common carriers by railroad, in interstate or foreign commerce, for injuries to employees from negligence; definition of employees * * *. Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act and of an Act entitled ' An Act relating to the liability of common carriers by railroad to their employees in certain cases ' (approved April 22, 1908), as the same has been or may hereafter be amended."

The scope of that amendment presents the only question for decision.

Prior to the amendment the nature of the task in which an employee was engaged at the instant of sustaining an injury determined the applicability of the Federal act. (*Shanks* v. *D., L. & W. R. R. Co.,* 239 U. S. 556; *Pecos & Northern R. Co.* v. *Rosenbloom,* 240 id. 439; *C., B. & Q. R. R. Co.* v. *Harrington,* 241 id. 177; *Erie R. R. Co.* v. *Welsh,* 242 id. 303.)

---

* See U. S. Code, tit. 45, §§ 51–60.— [Rep.

The duty is now cast upon us to determine the meaning of the amendment.

As the intention of the legislative body, embodied in a statute, is the law, the fundamental rule of construction, to which all other rules are subordinate, is that the court shall ascertain and give effect, unless it is in conflict with constitutional provisions, or is inconsistent with the organic law of the State, to the intention or purpose of the Legislature as expressed in the statute. (59 C. J. 948, 949.)

In construing a statute the courts are not controlled by the literal meaning of the language used but the spirit or intention of the law prevails over the letter thereof (*Brustein* v. *New Amsterdam Casualty Co.*, 255 N. Y. 137), it being generally recognized that whatever is within the spirit of the statute is within the statute although it is not within the letter thereof (*Flynn* v. *Prudential Ins. Co.*, 207 N. Y. 315), while that which is within the letter, although not within the spirit, is not within the statute. (*Riggs* v. *Palmer*, 115 N. Y. 506.) Effect will be given the real intention even though contrary to the letter of the law. (*Allen* v. *Stevens*, 161 N. Y. 122; 59 C. J. 964–967.) The rule of construction according to the spirit of the law is especially applicable when adherence to the letter would result in absurdity or injustice.

In construing a statute we may also consider relevant conditions existing when it was adopted. The particular mischief it was designed to remedy and the history of the period and of the statute itself may be considered. We are also at liberty to study the debates in and the reports to the law-making body in seeking and determining the evil against which it was aimed as a remedy. In *Wisconsin Railroad Comm.* v. *Chicago, B. & Q. R. R. Co.* (257 U. S. 563, at p. 589; 42 S. Ct. 232, at p. 237) Mr. Chief Justice TAFT, speaking for the court, said: " Committee reports and explanatory statements of members in charge made in presenting a bill for passage have been held to be a legitimate aid to the interpretation cf a statute where its language is doubtful or obscure." " As Blackstone tersely expressed it, in the interpretation of statutes due regard must be had to the old law, the mischief and the remedy." (*Woollcott* v. *Shubert*, 217 N. Y. 212.)

One of the established rules for the construction of statutes which is particularly applicable here, is that they should have a rational, sensible construction, if their meaning is at all doubtful. Where the language of a statute fairly permits, a construction which will lead to an unreasonable result should be avoided. (25 R. C. L. 1018.) It is to be presumed that the law-making body did not intend a law to work a hardship or injustice, and it is a reasonable

and safe rule of construction to resolve any ambiguity or absurdity in a statute in favor of a just and equitable operation of the law. (25 R. C. L. 1022.)

The discussions in Congress and the reports of committees indicate that it was the intent of the lawmakers to clarify the Federal Employers' Liability Act. This is apparent from the following paragraphs in the report of the Senate judiciary committee:

" This amendment is intended to broaden the scope of the Employers' Liability Act so as to include within its provisions employees of common carriers who, *while ordinarily engaged in the transportation of interstate commerce, may be, at the time of injury, temporarily divorced therefrom and engaged in intrastate operations.* * * *

. " The adoption of the proposed amendment will, to a very large extent, eliminate the necessity of determining whether an employee, *at the very instant of his injury or death,* was actually engaged in the movement of interstate traffic. If any part of the employee's duties (at the time of his injury or death) directly, closely, or substantially affected interstate or foreign commerce, the claimant would be considered entitled to the benefits of the act.

" The preponderance of service performed by railroad transportation employees is in interstate commerce. *As to those who are constantly shifting from one class of service to another,* the adoption of the amendment will provide uniform treatment in the event of injury or death while so employed." (Italics ours.)

Ever since the enactment of the Federal Employers' Liability Act it has been a subject of controversy whether a railroad employee, working for a carrier operating both kinds of traffic, at the time of sustaining an accident is engaged in intrastate or interstate commerce. The books are filled with conflicting decisions on the subject.

It is often a difficult question to determine whether a particular injury arose out of intrastate or interstate commerce. That difficulty is inherent in the complexities of operating a railroad in different States and transacting both intrastate and interstate business. The same employee may be engaged alternately during different hours of a single day in both kinds of traffic. At times it is next to impossible even for a railroad company to make a rigid classification of its employees between those engaged in intrastate and those engaged in interstate commerce, or to separate the two kinds of traffic. The subject has been a very troublesome one and a fruitful source of litigation. Many an injured employee has been turned out of court without redress because it appeared that at the moment of accident his task was of an intrastate character

and this without regard to the fact that the moment before his work was interstate.

Unquestionably it was to remedy this evil in the old law that Congress adopted the amendment the meaning of which is not free from doubt. The language perhaps is not well chosen. It is our duty, however, if we can reasonably do so, to resolve the ambiguity in claimant's favor. The statute (Workmen's Comp. Law, § 21) commands us to construe this amendment liberally in favor, and for the benefit, of employees or their dependents, all doubts as to the right to compensation being resolved in their favor and all presumptions indulged being propitious to them.

Guided by the rules of construction to which we have referred we are convinced that the amendment has no application to claimant. Undoubtedly it was intended to apply to a situation where employees are shifting from one class of service to another and it would be difficult, if not impossible, to determine in which type of traffic the worker was engaged at the time of injury. The words " any part of whose duties " used in the act evidently refer to and mean an employee any part of whose usual, ordinary and regular duties " shall be the furtherance of interstate or foreign commerce." Under this amendment the work which an employee is performing at the moment of injury shall no longer decide the jurisdictional issue. If the usual duties of the employee are of an interstate character then he comes within the purview of the act even though when an accident occurs, he is engaged in an intrastate function. In the case before us the usual, ordinary and regular duties of claimant related exclusively to intrastate activities. For five days of each week he was so engaged; on the remaining day only his work had to do with interstate commerce. On these facts, it seems to us, that it would be a perversion of justice to deny claimant the benefit of the compensation statute on the fine spun theory that he is deemed to be engaged in interstate transportation. The fact is that he was not so engaged when injured. If appellant is correct in its contention then it, and all railroads similarly situated, may evade the provisions of the Workmen's Compensation Law by the simple expedient of assigning an intrastate employee once a week, once a month, once a year, or once in any given period of time, to interstate duties. We are not willing to give this amendment such a harsh, unjust and unreasonable interpretation. In the absence of clear and unambiguous language to the contrary we should not impute to Congress in the enactment of this amendment such an absurd intent.

There is another very cogent reason for the conclusion that the amendment is not applicable to claimant. The power of

Congress to regulate commerce among the several States is supreme and plenary under the Constitution. The powers over commerce not delegated to the Federal government by the Constitution are reserved to the States. It is the rule — which is as well established as the rule that the regulation of commerce with other nations, States, or the Indian tribes belongs solely to Congress — that the States retain exclusive control over the commerce which is completely internal, which is carried on between one person and another in a State, and which does not extend to or affect other States. As to such commerce, the States have plenary power and Congress has no right to interfere. The State has authority in the government of its internal commerce to adopt protective measures of a reasonable character in the interest of the health, safety, morals and welfare of its people. The jurisprudence of the State is supreme and exclusive over personal injuries received by railroad employees while engaged in intrastate commerce. (11 Am. Jur., Commerce, § 18; *Boston & Maine R. R.* v. *Armburg*, 285 U. S. 234.) A State has an inherent and reserved right to regulate its local, domestic and internal commerce. The only limitations on this right are that it must be exercised in a manner not interfering with, or placing a burden on interstate commerce, and that it is subject to such regulation of intrastate commerce as Congress properly may and does make in order to regulate and protect interstate commerce. Within these limits, the power of a State to control and regulate its purely internal commerce is full, complete, plenary, unrestricted by the commerce clause of the Federal Constitution and free of the dominion of Congress. (15 C. J. S., Commerce, § 10.) It was said by Chief Justice MARSHALL in *Gibbons* v. *Ogden* (9 Wheat. 1, at p. 195): "The completely internal commerce of a State, then, may be considered as reserved for the State itself." True it is that Congress may regulate certain intrastate activities when they have such a close and substantial relation to interstate commerce that their control is essential to protect that commerce. That distinction may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them would effectually obliterate the distinction between what is national and what is local and create a completely centralized government. (*National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1.)

The work which claimant performed for five days each week has not such a close and substantial relation to interstate commerce as to be a part of it. Those duties are clearly intrastate over which Congress has no control. We may not presume that Congress intended to enact an unconstitutional statute. It has

been repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, the duty of the court is to adopt that which will save the act. (*Federal Trade Commission* v. *American Tobacco Co.*, 264 U. S. 298; *Panama Railroad Co.* v. *Johnson*, Id. 375; *Blodgett* v. *Holden*, 275 id. 142.)

To hold that this amendment applies to claimant would sanction another unwarranted invasion by Congress of the reserved powers of the States over their local concerns.

We have not overlooked the case of *Ermin* v. *Pennsylvania R. Co.* (36 F. Supp. 936) and the three cases of *Southern Pacific Co.* v. *Industrial Accident Commission* (113 P. [2d] 763, 768, 770; affd., —— Cal. ——, ——, ——; 120 P. [2d] 880, 887, 888).

The facts in those cases are essentially different from those in the case before us. In each instance the principal duties of the employee had to do with interstate commerce. In our case practically all claimant's duties had to do with intrastate affairs.

The award should be affirmed, with costs to the State Industrial Board.

FOSTER, J., concurs.

Award reversed and claim dismissed, with costs to appellant against the State Industrial Board.