In the Matter of the Claim of Isaac A. McGowan (Now Deceased), Respondent, against The New York Central Railroad Company, Employer and Self-Insurer, Appellant.

State Industrial Board, Respondent.

Third Department, December 29, 1942.

*Whalen, McNamee, Creblé & Nichols* (*Charles E. Nichols* of counsel), for appellant.

*John J. Bennett, Jr., Attorney-General* (*Roy Wiedersum* of counsel), for respondent.

*David Rosenfeld* for claimant.

Hill, P. J. Appeal by the Railroad Company, employer, from an award for total disability made payable to the widow of the claimant. It is contended that the Federal Employers' Liability Act (U. S. Code, tit. 45, ch. 2) controls for two reasons: *First,* that the claimant had " manifold duties of supervising work upon engines in both classes of commerce " and *second,* that the engine upon which he was working when injured had not been withdrawn from its regular work of drawing an interstate train.

The engine was taken from the train at Albany and placed in the Rensselaer shops at about four-thirty o'clock on the morning of the day of the injury, the boiler was leaking, and the fires were dumped to permit inspection and repairs. No leak was found by an outside inspection, and claimant got inside, when, through a defect in some device, hot water and steam were turned on, causing extensive and frightful burns. The following morning the engine, with repairs completed, was assigned to a run, and drew a train from Albany to Harmon.

Claimant said that he was an assistant terminal foreman. There was a general foreman and an assistant, and claimant was one of three or four general assistants. Concerning his supervisory duties, he was asked the following questions: "Q. Did you have charge of any of those other foremen, part of your work? A. No, sir. I did over the doper foreman or something like that; he came under our jurisdiction. Of course, we couldn't hire or fire him, but we gave the orders. Q. Lay out their work? A. Well, if we wanted anything done, we told them."

"The criterion of applicability of the statute is the employee's occupation at the time of his injury. * * * Under the circumstances of this case, whether respondent is within the Act must be decided not by reference to the kind of plant in which he worked, or the character of labor he usually performed, but by determining whether the locomotive in question was, at the time of the accident, in use in interstate transportation or had been taken out of it." (*New York, New Haven & Hartford R. R. Co.* v. *Bezue,* 284 U. S. 415, 420.) "The question for decision is, was Shanks at the time of the injury employed in interstate commerce within the meaning of the Employers' Liability Act? What his employment was on other occasions is immaterial, for, as before indicated, the act refers to the service being rendered when the injury was suffered." (*Shanks* v. *D., L. & W. R. R. Co.,* 239 U. S. 556, 558.) When claimant received his injuries his work and attention were devoted to this single engine. It is only when the work applies generally to both classes of commerce that the Federal Act applies. A watchman in a signal tower (*Erie R. R. Co.* v. *Collins,* 253 U. S. 77), a laborer removing snow from tracks (*N. Y. Central R. R. Co.* v. *Porter,* 249 U. S. 168), or a laborer who kept a track free from grass and weeds and also from obstructing debris (*Matter of Quirk* v. *Erie R. R. Co.,* 235 N. Y. 405) assist in the general operation of the railroad, and it is impossible to allocate their acts or assign the

work of one minute to one class, and the next minute to another class of commerce, however, the authorities do classify the employment when the facts permit.

An engine which had been in the roundhouse two days with the fires drawn, upon which repairs were being made, was not an instrumentality of interstate commerce, and an employee injured in connection therewith was entitled to State compensation. (*Matter of Zmuda* v. *D., L. & W. R. R. Co.*, 268 N. Y. 659; affg. 243 App. Div. 827.) An employee, injured at eight o'clock in the evening while placing signal lights on an engine that had been out of the service for some time, but which had been reassigned to interstate work to begin at twelve o'clock, was entitled to compensation. (*Matter of LaPoint* v. *N. Y. Central R. R. Co.*, 254 App. Div. 711.) An employee was in local work while repairing a locomotive ordinarily used both in inter- and intra-state commerce which, on the day of the accident, was taken to the roundhouse at seven-fifteen in the morning, the fire extinguished and the water drawn, with the work completed in time to be returned to its regular run at three in the afternoon. (*Matter of White* v. *Lehigh Valley R. R. Co.*, 251 App. Div. 507; leave to appeal to the Court of Appeals denied, 276 N. Y. 690.)

The engine upon which this claimant was working had been withdrawn from interstate commerce and his injury was received while he was engaged solely in an employment covered by the New York State Workmen's Compensation Law (Cons. Laws, ch. 67).

SCHENCK, J. (dissenting). On December 24, 1930, at the railroad's roundhouse in Rensselaer, claimant, Isaac A. McGowan, in the regular course of his employment by the railroad as an assistant terminal foreman, was burned by the escape of steam and hot water then being applied by pressure to engine 5206, which he was inspecting. He thus sustained injuries for which an award of $6,658.33 has been directed, in view of his death, to be paid to his widow, as prescribed by section 33 of the Workmen's Compensation Law.

The Rensselaer roundhouse is a terminal point where engines undergo heavy repairs quarter-yearly, as well as minor repairs found necessary on daily inspection. Quarterly repairs involve a thorough overhauling, while minor repairs consist in remedying, between incoming and outgoing trips of engines not withdrawn from service, such defects as may have been discovered by the engineer during his run or by inspection at the end of a trip. Minor repairs are in the nature of an emergency service, rendered promptly so that an engine may resume its work with

as little delay as possible. Among the emergency services performed at the Rensselaer roundhouse was the restoration of steam power which, as in the case of the engine here involved, had failed, causing delay in transportation.

Engines thus receiving emergency service each day at the Rensselaer roundhouse included those used to haul passenger trains from Boston, Massachusetts, to Albany and return; trains from Weehawken, New Jersey, to Albany and return; and trains from points in Ohio to New York city and return, as well as engines which hauled trains in transit wholly within the State of New York.

McGowan was one of several assistant terminal foremen employed at the Rensselaer roundhouse. His duties were to supervise and inspect not only heavy quarterly repairs to engines, but also the application of pressure to engines whose steam had failed, as well as daily inspection of engines going into the roundhouse at the end of their runs. His work as assistant foreman was to supervise the men under him, keeping them busy on the various tasks performed, which consisted both of heavy repair work and also of work on engines employed in and not withdrawn from interstate commerce. McGowan's task was not confined to any one particular job in the shop but covered different kinds of work done there, including supervision over the mechanics to see that their work was properly performed. Even though he might have a gang working on heavy quarterly repairs, yet, if circumstances required, as on the occasion of his injury, he would leave his quarterly work and take charge of the temporary emergency, which in this instance involved supervising and inspecting the application of steam pressure needed by engine 5206.

The railroad challenges the State Industrial Board's jurisdiction on two grounds: (1) that McGowan's manifold duties of supervising and inspecting work upon engines in both classes of commerce constituted employment so related to interstate transportation as to be substantially a part of it; and (2) that, regardless of the first ground, McGowan was engaged in a federal task at the moment of his injury because of the character of the instrumentality to which steam pressure was being applied under his supervision and inspection. If the first ground urged by the railroad is tenable, we need not consider the second, to which the opinion of Presiding Justice HILL is mainly directed.

Under controlling authorities, in this court and others, McGowan's task was federal. Ever since *Erie R. R. Co.* v. *Winfield* (244 U. S. 170), it has been settled that a railroad

employee is within the Federal Employers' Liability Act where his daily task is in both interstate and intrastate commerce. "If there is an element of interstate commerce in a traffic or employment it determines the remedy of the employee." (*Philadelphia & Reading R. Co.* v. *Polk,* 256 U. S. 332, 334.)

So, too, where an employee's task is " an intimate and integral part of " a railroad carrier's duties in furtherance of interstate transportation. (*Kinzell* v. *Chicago M. & St. P. R. Co.,* 250 U. S. 130, 134.)

" If  *  *  *  the nature of the work in which the plaintiff was employed at the time of his injury was in furtherance of both kinds of commerce, then he could assert his rights only under the Federal Employers' Liability Act." (*Tanona* v. *N. Y., N. H. & H. R. R. Co.,* 301 Mass. 589, 592.)

" It is the employment that determines whether or not the injury to the employee is within the purview of the act and not necessarily the particular act of the employee at the precise time of his injury.  *  *  *  He was engaged in both interstate and intrastate commerce, and in such case the liability of his employer was fixed by the Federal Employers' Liability Act and not by the Workmen's Compensation Act." (*Wheelock* v. *Industrial Comm.,* 318 Ill. 537, 541, 542, 544.)

The applicable test is whether the character of the work performed by an employee is such as to facilitate the movement of trains in interstate commerce, and not whether that work is static or dynamic in character. (*Rader* v. *Baltimore & Ohio R. Co.,* 108 F. [2d] 980, 984, 985; certiorari denied, 309 U. S. 682.)

The United States Supreme Court has thus summarized the doctrine of the cases hereinbefore cited: " Generally, when applicability of the Federal Employers' Liability Act is uncertain, the character of the employment, in relation to commerce, may be adequately tested by inquiring whether, at the time of the injury, the employee was engaged in work so closely connected with interstate transportation as practically to be a part of it." (*Southern Pacific Co.* v. *Industrial Accident Comm.,* 251 U. S. 259, 263.)

In 2 Roberts on Federal Liabilities of Carriers (2d ed.), it is said: " Service in employment does not commonly consist of isolated, unrelated acts, but rather of a series of acts, separable and perhaps dissimilar, strung together upon a thread of common purpose. The particular act which attends the injury is significant only as it shows or tends to show the ' nature of the work ' with respect to interstate commerce. It may or may not be sufficient, of itself, to show that nature. But while the specific

act in progress at the moment of injury may be devoid of character as to commerce, or may tend to show that the employee's work was intrastate in nature, yet if such act is considered as one step in a series of acts, it might clearly show the work to have been interstate in nature." (§ 727.) Also: " * * * participation in interstate commerce being shown, it is of no consequence, in determining the applicability of the liability statute, that he was also serving otherwise than in such commerce. And this is none the less true although the interstate service was in fact incidental to the other. The demands of the federal law being paramount, existence of interstate service in any degree controls the situation and renders the federal liability statute applicable." (§ 728.)

It was this principle which governed this court's decision that the federal act controlled the case of a brakeman who was injured while unloading a package in transit intrastate from his train which was also carrying freight in transit interstate. (*Evans* v. *U. S. Railroad Administration,* 191 App. Div. 704.) Following the *Evans* case, this court classified as federal the task of a brakeman who was injured while cutting out from a train, made up of cars in transit both interstate and intrastate, a car which carried no interstate freight. (*Matter of Nelson* v. *U. S. Railroad Administration,* 193 App. Div. 919.) Citing, among others, our decision in the *Evans* case, the Supreme Judicial Court of Massachusetts classified as federal the task of a baggageman who, at the moment of his injury, was loading an intrastate shipment upon an interstate train which could not start its journey until the intrastate shipment was on board. (*Saunders* v. *B. & M. R. R.,* 287 Mass. 56.) In May, 1920, this court, on the authority of two California cases, applied the federal act to the case of a flagman employed at a crossing to signal interstate and intrastate trains. (*Matter of Hanley* v. *N. Y. C. R. R. Co.,* 192 App. Div. 936.) In May of the following year, the United States Supreme Court ruled likewise. (*Philadelphia & Reading R. Co.* v. *DiDonato,* 256 U. S. 327.) To the same effect are: (*Flynn* v. *N. Y., S. & W. R. R. Co.,* 90 N. J. L. 450, 453; *Walker* v. *Chicago, I. and L. R. Co.,* 66 Ind. App. 165; *Dunlavy* v. *C. B. & Q. R. R. Co.,* 200 Ill. App. 75; and *West* v. *Atlantic Coast Line R. R. Co.,* 174 N. C. 125).

In our classification of this case we must bear in mind the admonitions of Judge Cardozo to avoid " an undue subdivision of a service which in reality was single and entire " (*Matter of Quirk* v. *Erie R. R. Co.,* 235 N. Y. 405, 407), and that " the reasonable exigencies of commerce in the light of presently

existing facts must fix the nature of the service, the field of its utility.'' (*Matter of Libertucci* v. *N. Y. C. R. R. Co.*, 252 N. Y. 182, 186.)

*Matter of Zmuda* v. *D., L. & W. R. R. Co.* (268 N. Y. 659), invoked by respondent and cited by the Presiding Justice, dealt with an operator of a turntable at a roundhouse, a plant instrumentality according to Mr. Justice VAN KIRK's classification in *Scelfo* v. *B., R. & P. R. Co.* (211 App. Div. 243). Moreover, the *Zmuda* case is pertinent only in connection with the second ground of appellant's challenge to the jurisdiction of the State Industrial Board, but consideration thereof is unnecessary in view of the conclusion herein reached with respect to the first ground.

The award should be reversed and the claim dismissed, with costs to the appellant against the State Industrial Board.

CRAPSER and HEFFERNAN, JJ., concur with HILL, P. J.; SCHENCK, J., dissents, in an opinion in which FOSTER, J., concurs.

Award affirmed with costs to the State Industrial Board.