## AGOSTINO v. PENNSYLVANIA R. CO.
### No. 2996.

District Court, E. D. New York.
July 2, 1943.

John C. Robinson, of New York City (Morris A. Wainger, of New York City, of counsel), for plaintiff.

Burlingham, Veeder, Clark & Hupper, of New York City (Ray Rood Allen, and G. Hunter Merritt, both of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

These are two motions; one, by the defendant to dismiss the complaint, and the other, by the plaintiff for an order striking from defendant's answer the fifth defense and so much of the first defense as denies the allegations contained in paragraph "IV" of the complaint.

Paragraph "IV" of the complaint is as follows: "At the time and place plaintiff was injured, as hereinafter described, he was in the employ of the defendant, and both plaintiff and defendant were engaged in interstate transportation, and at said time and place, all or part of plaintiff's duties, as such employee of the defendant, were in furtherance of interstate or foreign commerce and directly or closely and substantially affected such commerce."

Both motions relate to the question as to whether or not the plaintiff was employed in interstate commerce.

The parties have entered into a written stipulation of all the facts relating to interstate commerce. It is as follows:

"It Is Hereby Stipulated, by and between the parties to the above entitled action, for the purposes of this action only:

"1. That the defendant has for many years owned and operated a railroad system as a common carrier of passengers and freight in both interstate and intrastate commerce; and that it was engaged in such transportation on its main line and on a part of its railroad system known as the Conemaugh Division.

"2. That said Conemaugh Division consists of one eastbound and one westbound track, which, between Blairsville, Pennsylvania, and its point of connection with the main line, were at all the times herein mentioned, used for the transportation of freight in both interstate and intrastate commerce.

"3. That a portion of the tracks of said Conemaugh Division had for many years run parallel to the Conemaugh River; that in order to shorten a portion of said tracks, to reduce grades and eliminate curves and slides thereon, and to effect more efficient transportation of freight in interstate and intrastate commerce on defendant's railroad, the defendant undertook about seven years prior to December 31, 1940, a project known as the East of Blairsville Revision of Track Alignment, which consisted of the construction of roadbed and track approximately 8,000 feet in length to be connected at both ends with the existing tracks of said Conemaugh Division and to replace a portion of such existing tracks.

"4. That said Track Alignment Revision was made at a cost of about $255,000, and, unless connected with the existing tracks of the Conemaugh Division for the operation of cars and trains thereon, and the transportation of freight in interstate and intrastate commerce on defendant's railroad, was of no use to the defendant.

"5. That said Track Alignment Revision resulted in the shortening of defendant's tracks by approximately 670 feet, in the elimination of five curves, in reduction of grade, and in avoidance of slides thereon.

"6. That the grading and fill of the roadbed of said Track Alignment Revision was done by an independent contractor and was finished by said contractor shortly prior to December 16, 1940; that thereupon and on or about December 16, 1940, it became necessary for the defendant by its own employees to place tracks upon said

roadbed, consisting of rails, ties and ballast, which the defendant proceeded to do.

"7. That for about fifteen months prior to December 31, 1940, plaintiff had been in defendant's employ as a trackman or track laborer, and that for some months prior to December 16, 1940, he had worked as a trackman in the maintenance of defendant's tracks and roadbed, which were in use for the transportation of freight and passengers in interstate and intrastate commerce.

"8. That beginning about December 16, 1940, he commenced work in connection with the placing of rails, ties and ballast on said Track Alignment Revision, and he was engaged in such employment continuously until December 31, 1940, when he was injured.

"9. That by December 31, 1940, the rails and ties had been placed on said roadbed, and the two tracks had been laid, and these tracks were connected at their eastern end with the eastbound tracks of the Conemaugh Division; that another connection or cross-over was made with the Conemaugh Division tracks about 3,000 feet west of the first connection to move engines, cars and trains for placing cinder ballast for surfacing said tracks of said Track Alignment Revision.

"10. That on December 31, 1940, at the time plaintiff was injured, he and other employees of the defendant were engaged in spreading cinder ballast in surfacing one of said tracks; that their work was spreading cinder ballast, which was accomplished by the movement of the train and cars loaded with cinders over the tracks, while plaintiff and other employees were engaged in shoveling the cinders from the ends of the car toward the middle of the car, from which the cinders flowed by gravity onto the track and roadbed, upon which the train was being operated.

"11. That part of the work of the plaintiff on said December 31, 1940, consisted in operating a track car on the tracks of said Track Alignment Revision for the delivery of material and supplies to defendant's employees engaged in their work.

"12. That the transportation of revenue freight in both interstate and intrastate commerce on the tracks and roadbed of said Track Alignment Revision began on or about January 31, 1941, and has continued since that date."

■ It has been stipulated that in advance of the trial the Court determine whether the plaintiff was employed in interstate commerce. This procedure was followed in Ermin v. Pennsylvania Railroad Co., D.C., 36 F.Supp. 936, and is a desirable method of determining such a question. As pointed out in the Ermin case, it is better to submit questions of this character to the Court in the absence of the jury so as to avoid confusion at the trial.

The sole question presented — Was the plaintiff engaged in interstate commerce within the purview of the Federal Employers' Liability Act as amended by the Act of Congress, approved August 11, 1939? The pertinent portion of this Act is, as follows:

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act and of an Act entitled 'An Act relating to the liability of common carriers by railroad to their employees in certain cases' (approved April 22, 1908), as the same has been or may hereafter be amended." 53 Stat. 1404, 45 U.S.C.A. § 51.

At the time the Ermin case was decided counsel in that case, who are the same counsel as appear here, stated that there were no reported decisions construing this amendment. Counsel have called the attention of the Court to the fact that since the decision in the Ermin case there have been a number of reported decisions bearing upon the subject of interstate commerce; they are: Edwards v. Baltimore & O. R. Co., 7 Cir., 131 F.2d 366; Southern Pacific Co. v. Industrial Accident Commission and Mistretti, Cal.App., 113 P.2d 763, affirmed on opinion below by the Supreme Court of California, 19 Cal.2d 271, 120 P.2d 880; Louisville & N. R. Co. v. Potts, 178 Tenn. 425, 158 S.W.2d 729; Overstreet v. North Shore Corp., 317 U.S. 606, 63 S.Ct. 56, 87 L.Ed. ——; Id., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. ——; Id., 5 Cir., 128 F.2d 450; Pedersen v. Fitzgerald Construction Co., 63 S.Ct. 558, 87 L.Ed. ——; Id., 262 App.Div. 665, 30

N.Y.S.2d 989; Id., 288 N.Y. 687, 43 N.E.2d 83; Id., 173 Misc. 188, 18 N.Y.S.2d 920; A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Federal Trade Commission v. Bunte Brothers, Inc., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881; Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778, certiorari denied 63 S.Ct. 528, 87 L.Ed. ——; Wright v. New York Central R. Co., 263 App.Div. 461, 33 N.Y.S.2d 531, affirmed 288 N.Y. 719, 43 N.E.2d 97, certiorari denied Industrial Board v. New York Cent. R. Co., 317 U.S. 668, 63 S.Ct. 73, 87 L.Ed. ——; Lewis v. Industrial Accident Commission, 19 Cal.2d 284, 120 P.2d 886; Piggue v. Baldwin, 154 Kan. 708, 121 P.2d 183; Skanks v. Union Pacific R. Co., 155 Kan. 584, 127 P.2d 431; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. ——; Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. ——; Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754; United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726; Thomson v. Industrial Comm., 380 Ill. 386, 43 N.E.2d 19, certiorari denied 63 S.Ct. 529, 87 L.Ed. ——; Lawrence v. Rutland R. Co., 112 Vt. 523, 28 A.2d 488, certiorari denied 317 U.S. 693, 63 S.Ct. 434, 87 L.Ed. ——; Matter of McGowan v. New York Central Railroad Co., 265 App.Div. 272, 39 N.Y.S.2d 533.

■ The weight of authority is to the effect that the amendment should be liberally construed so as to extend the protection of this act to all employees, any part of whose duties furthers or affects interstate commerce "in any way."

The reasons for the amendment are contained in the discussions in Congress. Ermin v. Pennsylvania Railroad Co., supra.

It is unnecessary to state all the facts as they are fully set forth in the stipulation. The pertinent facts will be stated hereafter.

■ Suffice to say that the defendant, a common carrier for passengers and freight, both in interstate and intrastate commerce, was engaged in such transportation on its main line and on a part of its railroad system known as the Conemaugh Division. The Conemaugh Division is used for the transportation of freight in both interstate and intrastate commerce.

In order to shorten the tracks, to reduce grades, and eliminate curves and slides thereon and to effect more efficient transportation of freight and passengers in interstate and intrastate commerce, the defendant constructed a roadbed and tracks of approximately 8,000 feet in length to be connected at both ends with the existing tracks of the Conemaugh Division, which was to replace a portion of such existing tracks.

Beginning about December 16, 1940, defendant started laying tracks upon the roadbed. Plaintiff was injured on December 31, 1940. By that time the rails and ties had been placed on the roadbed and two tracks had been laid which were connected at their eastern end with the east bound tracks of the Conemaugh Division. Another connection with the Conemaugh Division tracks was made about 3,000 feet west of the first connection, to move engines, cars and trains for placing cinder ballast for surfacing the tracks of the Track Alignment Revision. On December 31, 1940, the plaintiff and other employees of the defendant were engaged in spreading cinder ballast for surfacing one of said tracks.

The actual transportation of revenue freight in both interstate and intrastate commerce on the tracks of said Track Alignment Revision began on or about January 31, 1941, and has continued since that date.

At the time of the accident the plaintiff was working on the final stage of the completion of the track revision. The tracks themselves, while new, were intended as an improvement for the portion of the tracks which were used in interstate and intrastate commerce. The purpose was to shorten the existing tracks and construct others in their place which would avoid slides, eliminate curves, and improve the grades.

Was the plaintiff's work in "furtherance" of interstate commerce? Did it "in any way" further or "affect" interstate commerce? Can it be said that the plaintiff's work was not "in any way" in "furtherance" of interstate commerce? Did it not substantially "affect" such commerce.

The Court is not required here to determine whether a person engaged in erecting a new project, intended to be used in interstate commerce, was engaged in interstate commerce, nor to determine whether

or not a person working on a new project, such as the construction of a new railway, passenger station or freight house intended to be used in interstate commerce, is actually engaged in interstate commerce.

Here the plaintiff was working on a revision of track alignment which was an improvement of the existing highway of interstate commerce. Was not that "in any way" in "furtherance" of interstate commerce? Does that not "affect" such commerce? It was just as important to place rails as to replace rails on existing tracks.

The conclusion seems inescapable that the construction work, while new, was only an improvement such as an extension, alteration, replacement or repair and, therefore, the plaintiff was engaged in interstate commerce.

Settle orders in accordance with this opinion.