## SHOENFELT v. PENNSYLVANIA R. CO.

District Court, S. D. New York.

Feb. 11, 1947.

Richter, Lord & Farage, of Philadelphia, Pa. (B. Nathaniel Richter, of Philadelphia, Pa., of counsel), for plaintiff.

Louis J. Carruthers, of New York City (Bruce Bromley, George S. Collins, and Royall Victor, Jr., all of New York City, of counsel), for defendant.

GALSTON, District Judge.

The question for decision is whether the plaintiff at the time that he sustained personal injuries, was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act, § 1, as amended, 45 U.S.C.A. § 51.

The plaintiff, while employed by the defendant railroad company, sustained severe burns, on November 16, 1944, while working in the soot chamber of a stationary boiler, operated by the defendant at South Altoona, Pennsylvania.

The applicable section of the Federal Employers' Liability Act, 45 U.S.C.A. § 51, reads as follows:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of * * * the next of kin dependent upon such employee, for such injury

or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

The plaintiff testified that he was employed by the railroad company in 1943 as a laborer. For a few months he worked at the freight station at Altoona and explained that at times he worked on a crane, a derrick, worked unloading sand, brick, coal, and "anything they had to do". The unloading was from freight cars, and he said, "They came from almost any place * * * in and out of the states." He also worked in the Altoona shops as a laborer. He explained that they made fires in the power house for "the entire plant, the entire system there, I guess".

On November 16, 1944, the day of the accident, he was a member of an ash gang, and explained that that entailed pulling the ashes out of the boiler and cleaning the soot chamber. In the boiler house his work was to fill the bins as the coal came up on the conveyor, and also to pull the ashes out. By that he meant "They got big hooks there and two men pulled the ashes down into the pit and on to the apron, and my job was to pull them in what we call the boiler there and that boiler was at that point, and then there is the soot work—throwing over the soot". He said that he had never worked cleaning out the soot before the time in question. That was denied by the foreman of the ash gang. It was while he was doing this that he was injured. We know nothing more from the record of how that particular work bore on interstate commerce. Leair, who was foreman of the gang, testified that the power plants supplied electric light for different parts of the Altoona works; also that in the Altoona works "they repair most every engine in the Altoona works" and that there was a car repair shop at Altoona.

From the foregoing, which is a resumé of testimony that bears on the nature of the plaintiff's work at the time of the happening of the accident, it is thus seen that the record is vague and unconvincing in a number of essential respects. In plaintiff's briefs, for example, it is stated: "It is a matter of common knowledge and beyond dispute that the Altoona plants repair interstate cars and engines, that interstate traffic passes through the said yards, and that the Altoona repair shops are the most important in the defendant's entire system."

If such is a matter of common knowledge, it cannot be inferred from the record in this case. We know from the record nothing on which an inference can be based "that the Altoona plants repair interstate cars and engines" or that "interstate traffic passes through the said yards". Indeed there isn't anything in the record about the yards and what is done therein. Nor do we know that "the Altoona repair yards are the most important in the defendant's entire system". Indeed, when Leair was asked by plaintiff's attorney:

"Q. And in the Altoona works do you repair engines that go out on the highways, outside of Pennsylvania, like on the run from Altoona out toward Toledo, Ohio, or even to Chicago? A. I couldn't say with certainty there."

Later, referring to the cars repaired in the Altoona works, he was asked:

"Q. And as to the cars that are repaired there, where the plaintiff was assigned to work, do those cars go out of the State of Pennsylvania? A. I couldn't say."

In proving that the plaintiff's employment at the power house consisted of removing ashes from the boilers and tending the apparatus which conveyed coal to the bins, in the absence of anything more it cannot be concluded, as the plaintiff would have the inference drawn, that at the time of the employment the plaintiff fell within the coverage of Sec. 51, 54 U.S.C.A.,

even as amended by the second paragraph quoted above, which was enacted by the Congress in 1939. Plaintiff's difficulty arises not out of a construction of the statute, but because of his failure to show that in the circumstances the duties of the plaintiff were in furtherance of interstate or foreign commerce, or in any way directly or closely and substantially affected such commerce.

As was said in McLeod v. Threlkeld et al., 319 U.S. 491, at page 495, 63 S.Ct. 1248, 1250, 87 L.Ed. 1538, "There is no single concept of interstate commerce which can be applied to every federal statute regulating commerce. See Kirschbaum Co. v. Walling, supra, 316 U.S. page ['517], 520, 62 S.Ct. page [1116], 1118, 86 L.Ed. 1638."

Federal cases cited following the amendment of 1939 to the Federal Employers' Liability Act, such as Ermin v. Pennsylvania R., D.C., 36 F.Supp. 936; Agostino v. Pennsylvania R. Co., D.C., 50 F.Supp. 726; Patsaw v. Kansas City Southern R. Co., D.C., 56 F.Supp. 897; and Zimmerman v. Scandrett, D.C., 57 F.Supp. 799, can all be distinguished on the facts. So too in some Circuit Court of Appeals cases as, for example, Edwards v. Baltimore & Ohio R. Co., 7 Cir., 131 F.2d 366. In that case it appeared that the plaintiff was a machinist's helper, and in that capacity was injured while repairing the automatic stoker of a locomotive that had been used in interstate commerce and was destined to resume such service as soon as it was repaired. The closest reference is to Shelton v. Thomson, 7 Cir., 148 F.2d 1. In that case the plaintiff was held to be within the protection of the act. He was injured while employed as a crane operator in a storehouse of the Chicago & Northwestern Railroad Company. The court found in this case that the same crane which the plaintiff operated moved many articles. Some were used on cars which moved in interstate commerce. The crane was used to lift wheels and other supplies which were in turn used in the repair of defendant's freight cars. But in this case the relation of the operation of the crane and the movement of wheels and other supplies for freight cars in interstate commerce was considerably more direct than any evidence in the instant case developed.

A late case, Kach v. Monessen Southwestern Ry., 3 Cir., 151 F.2d 400, disclosed that the railroad employee received injuries while employed as a locomotive fireman. That, of course, is a far different occupation from that in which Shoenfelt was engaged.

In conclusion it may be stated that the objective of the 1939 amendment to Sec. 51, Title 45 of U.S.C.A., was, as appears in the report of the Senate Committee on the Judiciary:

"This amendment is intended to broaden the scope of the Employers' Liability Act so as to include within its provisions employees of common carriers, who, while ordinarily engaged in the transportation of interstate commerce, may be, at the time of the injury, temporarily divorced therefrom and engaged in intrastate operations." *

If this test is applied to Shoenfelt, clearly it would not make of him one who would be covered by the amendment.

In the light of the foregoing, the verdict of the jury will be set aside. However, it would seem harsh to grant defendant's motion to dismiss the complaint. It may very well be that the plaintiff can, on a new trial, more clearly establish those things which he incorrectly argues are a matter of common knowledge and which I refuse to accept as a matter of common knowledge. Pursuant, therefore, to Rule 50, subdivision (b), and see also Rule 59 (d), of the Federal Rules of Civil Procedure, 28 U.S.C. A. following section 723c, a new trial may be had.

* Report of Senate Committee on the Judiciary on S. 1708 (Senate Report No. 611, 75th Congress, 1st Session, June 22, 1939).