In the Matter of the Claims of FRED BAIRD et al., Respondents, against NEW YORK CENTRAL RAILROAD COMPANY, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 29, 1948.

*Whalen, McNamee, Creble & Nichols* (*Sherman A. Murphy, Jr.,* of counsel), for appellant.

*Nathaniel L. Goldstein, Attorney-General,* for Workmen's Compensation Board, respondent.

DEYO, J. The three claimants herein were injured while employed by the New York Central Railroad Company, a self-insurer, in its West Albany shops, which furnish the only service and repair facilities for its steam locomotives operating in interstate and intrastate commerce over its lines east of Buffalo. It appears that a great majority of the locomotives repaired at West Albany come out of and eventually return to interstate service. These claimants were strictly "back shop" employees, that is, their work at all times had to do only with locomotives which had been completely withdrawn from immediate service, had been disabled and were without power, and which would not be reassigned until sometime after the repairs were completed. The period might vary from fifteen days to a matter of weeks or months. These employees at no time had any contact or did any work whatsoever in connection with a locomotive or any other equipment which was in immediate use in either interstate or intrastate commerce.

Baird was a blacksmith, working at a forge, making small locomotive parts which were subsequently stored until needed. He was injured while changing dies on his forging machine. Bartkowski was a machinist, who was injured while applying a guide liner to a "dead" locomotive in the shop. Derwing was also a machinist, whose duties were confined to a bench, repairing small, miscellaneous articles. He was hurt while lifting a bearing.

The sole issue herein presented is whether the Workmen's Compensation Board had jurisdiction to make the awards appealed from or did the work performed relegate these claimants to their remedies, if any, under the Federal Employers' Liability Act. The question turns on the interpretation to be accorded section 51 of title 45 of the United States Code, as amended in 1939 (53 U. S. Stat. 1404), the second paragraph of which reads as follows: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

Prior to this amendment the nature of the task in which the employee was engaged at the very moment of injury determined the applicability of the Federal act. (*Shanks* v. *Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556.) Obviously, this led to a great deal of confusion, uncertainty and hair splitting, for a borderline case would turn upon the slightest differentiation in duty or operation. The amendment was designed to do away with distinctions based on the character of the employee's activities at the moment he was hurt. (*Matter of Wright* v. *New York Central R. R. Co.*, 263 App. Div. 461, affd. 288 N. Y. 719, certiorari denied, 317 U. S. 668.)

What the Congress had in mind in adopting this amendment is clearly indicated by the report of the Senate Judiciary Committee.

" This amendment is intended to broaden the scope of the Employers' Liability Act so as to include within its provisions employees of common carriers who, while ordinarily engaged in the transportation of interstate commerce, may be, at the time of injury, temporarily divorced therefrom and engaged in intrastate operations. * * * In railroad switching service particularly men may be engaged in interstate and intrastate commerce intermittently several times during a single tour of duty.

" The adoption of the proposed amendment will, to a very large extent, eliminate the necessity of determining whether an employee, at the very instant of his injury or death, was actually engaged in the movement of interstate traffic. If any part of the employee's duties (at the time of his injury or death) directly, closely, or substantially affected interstate or foreign commerce, the claimant would be considered entitled to the benefits of the act.

" The preponderance of service performed by railroad transportation employees is in interstate commerce. As to those who are constantly shifting from one class of service to another, the adoption of the amendment will provide uniform treatment in the event of injury or death while so employed." (Senate Reports, 76th Cong., 1st Sess., Report No. 661, pp. 2, 3.)

It seems clear from the foregoing, that the Congress, in adopting the amendment, never intended thereby to include employees such as these claimants, whose employment at no time was of interstate character, simply because they were employed in a shop where interstate equipment was from time to time laid up for repairs. It must be borne in mind that even under the amendment the duties of the employee must still be

in furtherance of interstate commerce. " Commerce " in this sense has long been interpreted as meaning "transportation," and the test has been whether the employee's work was directly related to the interstate movement of persons and things in commerce. (*Chicago & North Western Ry. Co.* v. *Bolle,* 284 U. S. 74.) Work in repair shops on " dead " engines or other equipment withdrawn from service has never been considered as coming within this definition and test. (*Matter of McGowan* v. *New York Central R. R. Co.,* 290 N. Y. 889.) Although the amendment of 1939 did away with the requirements of the earlier cases that the employee must be engaged in interstate commerce at the very moment of injury, it did not eliminate the necessity that his duties at some time or other must be in the furtherance of such commerce. If the machinist at his bench and the blacksmith at his forge are to be included, we are in effect, holding that every employee of any carrier engaged in interstate commerce comes within the provisions of the amendment and are disregarding entirely the requirement that some part of his duties shall be in furtherance of or shall directly or closely and substantially affect such commerce. The effect of any such interpretation is of course obvious. We are depriving these three claimants and many more residents of this State of the benefits of the Workmen's Compensation Law solely because, through necessity or choice, they happen to work for an employer engaged in interstate commerce, and we are doing it in the face of the tenth amendment to the Federal Constitution, wherein it is written, " The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

The reported decisions do not require us to go that far. *Matter of Wright* v. *New York Central R. R. Co.* (263 App. Div. 461, *supra*), principally relied upon by the appellant, concerned a claimant who worked five days a week as a boilermaker repairing engines withdrawn from service, and on the sixth as a boiler inspector of " live " locomotives, concededly engaged in interstate commerce. While pursuing his duties as boilermaker he was injured. The court held that he came within the scope of the Federal act. This was exactly the type of situation which the amendment was designed to cover; that of an employee whose duties were divided between interstate and intrastate activities. Under those circumstances, the interstate character, even though slight, must prevail, the thought being that even if it may work a decided hardship in individual cases, uncertainty and confusion is thus avoided. This is a far cry from the

holding urged here, that every employee, even though his duties may be entirely foreign to our established conception of interstate commerce, is to be deprived of the benefits of the Workmen's Compensation Law.

*Matter of Assman* v. *Long Island R. R. Co.* (269 App. Div. 871) does not hold contrary to this view. Although the language of that decision would seem to support the appellant's position, a study of the record indicates that the issue with which we are presently concerned, was not litigated, it being conceded by the claimant that if disability did not occur until subsequent to August 11, 1939, the effective date of the amendment, he was not entitled to compensation.

The various decisions in the Federal courts, although embodying language as broad as even the appellant might wish, are, in the main, clearly distinguishable. Some of these involved employment which would have been held to be interstate in character before the adoption of the amendment. In *Edwards* v. *Baltimore & O. R. Co.* (131 F. 2d 366) the plaintiff was engaged in making running repairs on " live " locomotives which had not been withdrawn from interstate service. Similarly, in *Zimmermann* v. *Scandrett* (57 F. Supp. 799, 804), the plaintiff was employed as a maintenance man in a round house, the " facilities of which were very largely devoted to interstate commerce in the housing and preparing of locomotives previously used and intended for later use in such commerce."

Other Federal decisions are distinguishable on the same grounds as the *Wright* case (*supra*) namely, that the employee's activities embraced both interstate and intrastate duties. The tinsmith in *Bretsky* v. *Lehigh Valley R. R. Co.* (156 F. 594), injured while repairing a dismantled locomotive, was also, we are told, employed to daily inspect " live " locomotives. Likewise, in *Ermin* v. *Pennsylvania R. Co.* (36 F. Supp. 936), the injured brakeman was employed in the movement of both interstate and intrastate trains, locomotives and equipment.

In *Skidmore* v. *Baltimore & O. R. Co.* (167 F. 2d 54), a recovery was permitted under the Federal act in favor of a car repairman. However, the question of jurisdiction was not involved or even mentioned.

*Virginian Ry. Co.* v. *Federation* (300 U. S. 515) involved the constitutionality of the Railway Labor Law Act, and although it was held that shop employees had such a relation to the interstate activities of the railroad as to be considered a part of them, for collective bargaining purposes, it can scarcely be considered as an authoritative interpretation of section 51 of

the Federal Employers' Liability Act, particularly since the decision was handed down some two years before the amendment with which we are concerned was even adopted.

We must admit that there are other Federal decisions and decisions of other States which cannot be reconciled with the views herein expressed, and that some of them do go as far as the appellant would have us go. For example, in *Shelton* v. *Thomson* (148 F. 2d 1), it was held that the operator of a crane in a storehouse was engaged in interstate commerce because at times he lifted wheels into position for repairing cars, some of which were subsequently used in interstate commerce. A similar decision was reached in *Trucco* v. *Erie R. R. Co.* (353 Pa. 320, certiorari denied 328 U. S. 843) in the case of a blacksmith's helper making repair parts for locomotives used in interstate commerce. On the other hand, there are cases such as *Shoenfelt* v. *Pennsylvania R. Co.* (69 F. Supp. 728, 730), wherein the District Court for the Southern District of New York declined to assume as a matter of common knowledge that the defendant's shops were an instrumentality of interstate commerce and refused to hold that the plaintiff, a laborer engaged in cleaning ashes from a stationary boiler, was acting in furtherance of such commerce. The court remarked, after noting the report of the Senate Judiciary Committee (*supra*) " If this test is applied to Shoenfelt, clearly it would not make of him one who would be covered by the amendment." Likewise, the District Court for the Northern District of California in *Holl* v. *Southern Pac. Co.* (71 F. Supp. 21), held that a clerk handling claims for merchandise lost or damaged in the course of interstate commerce, was not engaged in the furtherance of such commerce, stating at page 23, " The aim of the amendment was to ' eliminate the necessity of determining whether an employee, at the every instant of his injury or death, was actually engaged in the movement of interstate traffic.' * * *

" It was, no doubt, the object of the amendment to enlarge the railroad transportation group to be benefited by the Act. This was achieved *not by changing the main section,* but by adding a new clause to it. The main section still left the test of liability that the employee be ' employed by such carrier in such commerce.' "

Admittedly all of the decisions cannot be reconciled. That was true in the past and will in all probability be true in the future. Suffice it to say that up to this point, neither the Court of Appeals of our own State, nor the United States Supreme Court has accorded to the amendment the extreme and all

embracing interpretation herein urged. In the absence of any such judicial directive, we may with propriety sustain the findings of the Workmen's Compensation Board to the effect that these particular claimants were not employed in interstate commerce within the intent and meaning of the Federal Employers' Liability Act, and that no part of their duties was in the furtherance of or did in any way directly or closely and substantially affect such commerce.

The awards should be affirmed, with costs to the Workmen's Compensation Board.

HILL, P. J., HEFFERNAN and BREWSTER, JJ., concur; FOSTER, J., dissents, for the reasons expressed in dissenting opinion in *Matter of Christo* v. *New York Central R. R. Co.* (274 App. Div. 1012).

Awards affirmed, with costs to the Workmen's Compensation Board.